The State of Ohio, Appellee, *v.* Johnson, Appellant.

[Cite as State *v.* Johnson (1989), 46 Ohio St. 3d 96.]

(No. 88-1524—Submitted June 7, 1989—Decided October 18, 1989.)

John T. Corrigan, prosecuting attorney, and Margaret M. Gardner, for appellee.

James R. Willis, for appellant.

*Per Curiam.* Appellant has raised ten propositions of law. Each has been thoroughly reviewed and for the reasons stated below we find them without merit, and uphold the appellant's convictions and death sentence.

In his first proposition of law, appellant argues that the state failed to put forward evidence legally sufficient to support his conviction. Specifically, appellant contends that the evidence was insufficient to prove beyond a reasonable doubt that he committed the murder or robbery, and that the facts failed to substantiate that the same person committed both the aggravated robbery and the murder.

The evidence of appellant's guilt was entirely circumstantial. We have held that "[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897, syllabus; see, also, *State* v. *Graven* (1978), 54 Ohio St. 2d 114, 118, 8 O.O. 3d 113, 116, 374 N.E. 2d 1370, 1373; *State* v. *Goodin* (1978), 56 Ohio St. 2d 438, 10 O.O. 3d 533, 384 N.E. 2d 290, paragraph one of the syllabus. "Whether a theory of innocence is reasonable must be determined in view of the weight and credibility that the fact finder gives the evidence, and an appellate court can reverse a conviction based in part on circumstantial evidence only where the evidence is insufficient as a matter of law to enable the fact finder to exclude a reasonable hypothesis of innocence." *State* v. *Hankerson* (1982), 70 Ohio St. 2d 87, 92, 24 O.O. 3d 155, 158, 434 N.E. 2d 1362, 1366, citing *State* v. *Sheppard* (1956), 165 Ohio St. 293, 59 O.O. 398, 135 N.E. 2d 340; *State* v. *Graven, supra,* at 119, 8 O.O. 3d at

116, 374 N.E. 2d at 1373-1374. Although this court usually does not weigh the evidence presented below, "it may do so in order to determine whether that evidence is of sufficient probative force to support a finding of guilt for conviction in a criminal case." State v. Nicely (1988), 39 Ohio St. 3d 147, 155, 529 N.E. 2d 1236, 1243.

Appellant asserts that there was no evidence which indicated he was inside the building at the time of the murder or the robbery. In reviewing the evidence we note that Steven Graster testified that on April 26, 1983 he saw the appellant enter the Reno Hotel through the side entrance sometime before 9:45 a.m. Thus, the jury could have reasonably rejected appellant's testimony that he had never been buzzed through the second set of doors into the hotel that morning. Also, at approximately 10:00 a.m., Lundy saw appellant walking down the steps of the hotel with the front door open behind him. Since it was shown at trial that the front door could not be opened from the outside, the most probable inference is that appellant was coming out of the hotel. This was supported by Lundy's statement to Ganelle Johnson that she " 'saw Gary [appellant] coming out of the hotel,' " coupled with Lundy's testimony that appellant said "he wasn't going back into the hotel, Dee wasn't going to blame him for anything that happened in the hotel."

Appellant argues that the evidence did not show that he murdered Eunice Graster, and suggests that the murderer might have been Steven Graster or Mr. and Mrs. Arnold. However, Steven testified that he departed the hotel between 9:35 and 9:45. Also, W.I.C. clinic records showed that he arrived at the clinic at Miles and Broadway by 10:00 a.m. Additionally, the evidence indicates that Steven cared for Eunice. Specifically, when Steven heard that his wife was dead he hit a wall with his fist. Moreover, Robin Johnson identified a note she had seen at the Reno Hotel which read: "I love you Steven Graster. Eunice."

Focusing on the Arnolds, they were regular customers who returned to the hotel after the murder. Also, they were not observed leaving the hotel until after the police arrived. Under these circumstances, the jury could have found unreasonable a theory exonerating appellant by throwing suspicion on the Arnolds.

The jury could have reasonably concluded that appellant was inside the hotel on the day of the murder and therefore they could have also decided appellant was lying when he testified otherwise, a circumstance tending to show consciousness of guilt. Consequently, the evidence is sufficient to eliminate all reasonable hypotheses that appellant did not kill Eunice.

Appellant maintains that there is no proof that the murder and theft offenses were related. The facts indicate that both crimes took place within the same time period. Specifically, the hotel's money, kept in a cash box located in a locked office, was stolen and the clerk on duty during this period was murdered. Also, the only persons known to have been in the hotel at this time were appellant and the Arnolds. Both parties would have had access to the desk clerk and the money. Therefore, it is very likely that both crimes were related.[1]

---

[1] Since the evidence indicates that the same person committed both crimes within a narrow time sequence, it would be reasonable to believe that the aggravated murder was directly associated with the aggravated robbery as part of one continuous occurrence.

See State v. Cooper (1977), 52 Ohio St.

Appellant's final contention under his first proposition of law is that the theft was not proven to be aggravated robbery. The robbery and murder were shown to have been part of the same occurrence, which was evidenced by the use of a deadly weapon in the commission of the murder of Eunice Graster and the exercise of control over the weapon in the commission of the theft offense. Thus, it is reasonable to conclude that the appellant committed aggravated murder and aggravated robbery under R.C. 2911.01 (A)(1) and (2).[2]

As we have stated previously, "a reviewing court will not reverse a verdict where the jury could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt." *State* v. *Scott* (1986), 26 Ohio St. 3d 92, 102, 26 OBR 79, 88, 497 N.E. 2d 55, 64, certiorari denied (1987), 480 U.S. 923, rehearing denied (1987), 481 U.S. 1034, citing *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132.

The facts presented in this case would have enabled the trier of fact to conclude beyond a reasonable doubt that appellant was guilty of the offense charged, thereby excluding any reasonable theory of innocence. Therefore, the trial court properly overruled the appellant's motion for acquittal pursuant to Crim. R. 29(A) as the evidence was such that reasonable minds could reach different conclusions. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184, syllabus; see, also, *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 34 O.O. 2d 270, 214 N.E. 2d 417, paragraph two of the syllabus; *State* v. *Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548, paragraph five of the syllabus.

Accordingly, appellant's first proposition of law is overruled.

In his second, fifth and tenth propositions of law, appellant alleges prosecutorial misconduct. First, appellant contends that the prosecutor improperly recited facts outside the record in his closing argument in the guilt phase of the trial.

The prosecutor noted:

"Eunice Graster was shot by a left-handed person. She was shot in the back of the head on the left side. The two gunshot wounds to the back are to the left side of the back * * *. And there he stood behind her, taller than she, that morning down in that dark basement, and the first shot through her head drove her to her knees, to the back of her, and that's where the dirt came from on the knees.

"The next two shots took her right in the back, and she fell over onto the hose, and he leaned over her there and put the final shot into her left breast, and that's where that one bullet was found in the hose. The left-handed

---

2d 163, 179-180, 6 O.O. 3d 377, 386, 370 N.E. 2d 725, 736, vacated on other grounds (1978), 438 U.S. 911.

[2] R.C. 2911.01, aggravated robbery, provides that:

"(A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon * * * on or about his person or under his control;

"(2) Inflict, or attempt to inflict serious physical harm on another.

"(B) Whoever violates this section is guilty of aggravated robbery, an aggravated felony of the first degree."

In committing the aggravated murder of Eunice Graster appellant violated R.C. 2911.01, by having a deadly weapon under his control and inflicting serious physical harm on another.

Gary Johnson, the defendant in this case, ladies and gentlemen."

Although there was no evidence in the record that the appellant was left-handed, the objection made was not contemporaneous with the prosecutor's comments; therefore, it was untimely. This court has consistently held that "[i]mproper remarks of counsel during argument, unless so flagrantly improper as to prevent a fair trial, should be at once objected to and exception taken; otherwise error cannot be predicated upon the remarks alleged to have been improper." *State* v. *DeNicola* (1955), 163 Ohio St. 140, 56 O.O. 185, 126 N.E. 2d 62, paragraph three of the syllabus; *State* v. *Wade* (1978), 53 Ohio St. 2d 182, 186, 7 O.O. 3d 362, 364, 373 N.E. 2d 1244, 1247, vacated on other grounds (1978), 438 U.S. 911. Appellant failed to object until the prosecutor had completed his summation and the jury was properly instructed. Also, as the court of appeals pointed out, the jury was specifically instructed by the trial court that "[t]he evidence does not include * * * the closing arguments of counsel. * * * The closing arguments of counsel are designed to assist you, but they were not evidence." Since appellant failed to timely object to the prosecutor's comment that Johnson was left-handed, we must review it using a plain-error analysis pursuant to Crim. R. 52(B).

In examining the comment made by the prosecutor, the issue is whether but for the prosecutor's misconduct the verdict would have been otherwise. See *State* v. *Long* (1978), 53 Ohio St. 2d 91, 96-97, 7 O.O. 3d 178, 181, 372 N.E. 2d 804, 808 (failure to timely object to any improper jury instruction does not constitute plain error under Crim. R. 52[B] unless, but for the error, the outcome of the trial clearly would have been otherwise). Moreover, "[n]otice of plain error under Crim. R. 52(B) is

to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus; *McIntyre* v. *United States* (C.A. 8, 1967), 380 F. 2d 822, 825, fn. 1, certiorari denied (1967), 389 U.S. 992; *Schumacher* v. *United States* (C.A. 8, 1954), 216 F. 2d 780, 787, certiorari denied (1955), 348 U.S. 951; *United States* v. *Reed* (C.A. 8, 1971), 446 F. 2d 1226, 1230.

We hold that the circumstantial evidence in this case was compelling and, therefore, we cannot say that but for the alleged error during the closing arguments of the guilt phase of the trial the jury's verdict would have been otherwise.

Appellant further claims prosecutorial misconduct in the penalty phase of the trial. During his closing argument in the penalty phase the prosecutor commented:

"What are the aggravating circumstances of the crime? Not one, not two, not three, not four, but five times, five times she was shot. Who interceded even after shot one on her behalf? Death is so final for Eunice Graster. Who after shot two and three? Death is so final to Eunice Graster. And who after four and five as the shadow of death hovered over her body there, who interceded for Eunice Graster?"

We note initially that the comment of the prosecutor that "death is so final for Eunice Graster" was proper, given the earlier argument by defense counsel concerning what the appropriate penalty should have been in this case, by stating:

"You have already adjudged this defendant to be guilty, and the moving finger in that instance certainly has writ. You now have to deal with what is the appropriate penalty. Death is so final, so very final."

Appellant claims the reference to

the number of times the victim was shot was improperly characterized as an aggravating circumstance. Clearly, the comments made by the prosecutor went beyond the aggravating circumstances set forth in R.C. 2929.04. And, we held in *State* v. *Johnson, supra,* syllabus:

"R.C. 2941.14(B) limits the aggravating circumstances which may be considered in imposing the death penalty to those specifically enumerated in R.C. 2929.04(A)."[3]

Although the prosecutor's comments were improper, appellant again failed to timely object. Therefore, the appropriate review in this instance is a plain-error analysis.

The trial court specifically instructed the jury that "the aggravating circumstances are precisely set out in the specification contained in your 'guilty' verdict form as to the first count of the indictment." The court then recited the language of the specification. Also, the court instructed on the procedure for weighing the evidence against the mitigating factors presented by appellant. Thus, we cannot say that but for the prosecutor's improper comments the penalty recommendation would have been

otherwise. See *State* v. *Long, supra; State* v. *DeNicola, supra; State* v. *Wade, supra.* Accordingly, appellant's second, fifth and tenth propositions of law are overruled.

In appellant's third proposition of law he asserts that, since the firearm specification was included in the aggravated murder indictment but impermissibly submitted to the jury as an aggravating circumstance during the penalty phase in his first trial, the grand jury must have originally meant the specification to be an aggravating circumstance in the indictment. Therefore, he argues, it was improper to submit it as a firearm specification in the second trial.

In this case the firearm specification in the aggravated murder count of the indictment provided:

"SPECIFICATION TWO:

"The Grand Jurors further find and specify that the offender Gary Johnson had a firearm on or about his person or under his control while committing the offense charged in this count of the indictment."

The language of the indictment followed the language of R.C. 2941.141[4] verbatim. Here, there was no evidence that the grand jury be-

---

[3] R.C. 2941.14(B) provides:

"Imposition of the death penalty for aggravated murder is precluded unless the indictment or count in the indictment charging the offense specifies one or more of the aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code. If more than one aggravating circumstance is specified to an indictment or count, each shall be in a separately numbered specification, and if an aggravating circumstance is specified to a count in an indictment containing more than one count, such specification shall be identified as to the count to which it applies."

[4] R.C. 2941.141 provides in pertinent part:

"(A) Imposition of a term of actual in-

carceration upon an offender under division (A) of section 2929.71 of the Revised Code for having a firearm on or about his person or under his control while committing a felony is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender did have a firearm on or about his person or under his control while committing the offense. A specification to an indictment, count in the indictment, or information charging the offender with having a firearm on or about his person or under his control while committing a felony shall be stated at the end of the body of the indictment, count, or information, and shall be in substantially the following form:

"SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand

lieved that the firearm specification was a capital specification. Also, the trial court properly submitted the specification to the jury during the guilt phase rather than the penalty phase of the trial. Additionally, appellant seems to imply that the indictment was amended without any actual alteration in its language. However, this argument is unsupported by the facts in the briefs or record. Therefore, appellant's third proposition of law is not well-taken.

In support of his fourth proposition of law, appellant asserts that "[w]here * * * the verdict * * * may have been predicated on one of two or more alternative theories submitted to the jury" it was error for the trial court not to instruct the jury specifically that it must concur unanimously on at least one of the alternatives if it was to convict. Specifically, appellant points to the disjunctive nature of the trial court's instructions and argues that it prejudiced the appellant since the verdict had the potential of being less than unanimous on a particular theory of guilt.[5]

We begin with the assumption that, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner* v. *United States* (1970), 396 U.S. 398, 420, citing *Crain* v. *United States* (1896), 162 U.S. 625, 634-636; *Smith* v. *United States* (C.A. 5, 1956), 234 F. 2d 385, 389-390; *Price* v. *United States* (C.A. 5, 1945), 150 F. 2d 283, certiorari denied (1946), 326 U.S. 789.

Thus, the prevailing rule is, "a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *United States* v. *Beros* (C.A. 3, 1987), 833 F. 2d 455, 460, citing *United States* v. *Schiff* (C.A. 2, 1986), 801 F. 2d 108, certiorari denied (1987), 480 U.S. 945; *United States* v. *Frazin* (C.A. 9, 1986), 780 F. 2d 1461, certiorari denied (1986), 479 U.S. 839, 844; *United States* v. *Murray* (C.A. 2, 1980), 618 F. 2d 892.

However, if a single count can be divided into two or more "distinct conceptual groupings," the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict. *United States* v. *Gipson* (C.A. 5, 1977), 553 F. 2d 453, 458; accord *United States* v. *Beros, supra,* at

---

Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about his person or under his control while committing the offense)."

[5] First the appellant points to the specification dealing with aggravated murder as being disjunctive:

"The State charges in Specification No. 1 that the defendant, Gary Johnson, committed the offense of aggravated murder of Eunice Graster while the defendant was committing or attempting to commit, or while fleeing immediately after committing or attempting to commit the offense of aggravated robbery."

Next, appellant argues that the aggravated robbery instruction had the potential for causing nonunanimity among the jurors:

"Before you can find the defendant, Gary Johnson, guilty of aggravated robbery of Eunice Graster as charged in the second count of the indictment, you must find beyond a reasonable doubt that * * * the defendant did, in attempting or committing a theft offense, or in fleeing immediately after such attempt or offense upon Eunice Graster, have a deadly weapon * * *."

461 (where there appears a possibility of jury confusion in light of the allegations made and the statute charged, an augmented general instruction may be necessary to ensure that the jury understands its duty to unanimously agree to a particular set of facts); *United States* v. *Echeverry* (C.A. 9, 1983), 698 F. 2d 375, modified (1983), 719 F. 2d 974, 975; *United States* v. *Payseno* (C.A. 9, 1986), 782 F. 2d 832, 837; but, see, *Berrisford* v. *Wood* (C.A. 8, 1987), 826 F. 2d 747, 754.

In the case *sub judice,* appellant suggests that he could have been convicted by less than a unanimous jury since some of the jurors could have found that he murdered Eunice Graster while committing aggravated robbery, some that he murdered her while attempting to commit aggravated robbery, some that he murdered her while fleeing immediately after committing aggravated robbery, and some that he murdered her while fleeing immediately after attempting aggravated robbery. However, even assuming *arguendo* that the jury had split on the alternatives offered by the specification, each juror still would have agreed that the appellant had murdered Eunice Graster in conjunction with at least attempting to commit aggravated robbery, and this alone would have been adequate to sustain the conviction.

We believe the jury was faced with a "single conceptual grouping of related facts," rather than two or more "distinct conceptual groupings." *United States* v. *Duncan* (C.A. 6,

1988), 850 F. 2d 1104, 1112-1113. Essentially, the alternatives presented to the jury and charged in the specifications were not conceptually distinct. Therefore, a "patchwork" or less than unanimous verdict was not possible. Furthermore, even if we would accept appellant's contention, the record fails to indicate any potential for jury confusion. Accordingly, appellant's fourth proposition of law is overruled.

In his sixth and seventh propositions of law, appellant contends that R.C. 2929.03(D)(2) is unconstitutional. The issues raised by appellant herein have been raised and rejected by this court in *State* v. *Coleman* (1988), 37 Ohio St. 3d 286, 294, 525 N.E. 2d 792, 800; *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264; and *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 241-242, 15 OBR 379, 381, 473 N.E. 2d 768, 774. See *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568, syllabus.

Appellant also takes issue, in his eighth proposition of law, with the trial court's penalty phase instruction which indicated that the jury's recommendation of death was not binding on the trial court,[6] thus violating *Caldwell* v. *Mississippi* (1985), 472 U.S. 320. We have held previously that an accurate instruction regarding the jury's responsibility does not violate *Caldwell*. *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 21-22, 23 OBR 13, 18-19, 490 N.E. 2d 906, 912, citing *Caldwell, supra,* at 248 (O'Connor, J., concurring); see, also, *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 429, 28 OBR 480,

---

[6] The trial court instructed:

"A jury recommendation to the Court that the death penalty be imposed is just that—a recommendation, and is not binding upon the Court. The final decision as to whether the death penalty shall be imposed upon the defendant rests upon this Court.

In the final analysis, after following the procedures and applying the criteria set forth in the statute, I, the Judge, will make the decision as to whether the defendant, Gary Johnson, will be sentenced to death or life imprisonment."

482, 504 N.E. 2d 52, 54; *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 143-144, 22 OBR 203, 220, 489 N.E. 2d 795, 812; *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 113-114, 31 OBR 273, 275, 509 N.E. 2d 383, 387-388; *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 3, 520 N.E. 2d 568, 570-571. Moreover, the United States Supreme Court has held recently that in order "[t]o establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger* v. *Adams* (1989), 489 U.S. ___, ___, 103 L. Ed. 2d 435, 443, 109 S. Ct. 1211, 1215; see, also, *State* v. *Hicks* (1989), 43 Ohio St. 3d 72, 79-80, 538 N.E. 2d 1030, 1038-1039. Accordingly, appellant's eighth proposition of law is overruled.

We now independently weigh the aggravating circumstance and the mitigating factors as required under R.C. 2929.05(A).

The sole statutory aggravating circumstance was that appellant murdered Eunice Graster while committing an aggravated robbery. R.C. 2929.04(A)(7).

Against this aggravating circumstance we weigh all mitigating factors drawn from the nature and circumstances of the offense; the history, background, and character of appellant; and any other factors listed in R.C. 2929.04(B)(1) through (7) which exist in this case. We find from the record that the only mitigating factor was appellant's unsworn testimony in which he continued to proclaim his innocence despite his conviction. However, as the court of appeals noted, appellant's attorney (the same attorney who obtained a reversal of the original conviction in *State* v. *Johnson, supra*) "was thoroughly familiar with the case, so the decision not to present any other evidence in mitigation may well have been because there was none, except for that offered during the guilt phase of trial, or the omission of such evidence may well have been the result of a tactical, informed decision by counsel."

We find from the guilt phase of the trial that appellant lost an eye at the age of ten, spent months in the hospital, and was consequently denied promotion to the next grade. Also, appellant had been married and has a young daughter. Additionally, appellant testified he graduated from high school, worked for approximately ten years thereafter, and at one time owned his own home.

Based on the foregoing, we conclude that the aggravating circumstance outweighs the factors presented in mitigation beyond a reasonable doubt.

Our final task is to determine whether the sentence of death is appropriate in this case. In carrying out this analysis we have compared appellant's sentence in this case with those cases we have previously reviewed in which the death penalty was imposed. We hold that the death penalty here is proportionate to the death sentence approved for murder coupled with robbery in *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 264-265, 527 N.E. 2d 844, 857; *State* v. *Post* (1987), 32 Ohio St. 3d 380, 395, 513 N.E. 2d 754, 768, fn. 10, citing *State* v. *Martin* (1985), 19 Ohio St. 3d 122, 19 OBR 330, 483 N.E. 2d 1157 (aggravated robbery-murder of drugstore owner and no significant evidence offered in mitigation); *State* v. *Williams, supra* (aggravated robbery-murder with meager evidence submitted in mitigation); *State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922, certiorari denied (1987), 480 U.S. 926; *State* v. *Scott, supra; State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 512 N.E. 2d

611 (murder of night clerk at store during the course of an aggravated robbery).

In conclusion, we uphold appellant's sentence of death. We are satisfied that the aggravated circumstance appellant was found guilty of committing outweighs the mitigating factors beyond a reasonable doubt. And, our proportionality review convinces us that the sentence of death is appropriate in this case.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.