Defendant, Linda S. Smark, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of one count of illegal processing of drug documents in violation of R.C. 2925.23(B)(1). On appeal, defendant sets forth the following three assignments of error:
 [I.] The court erroneously barred the testimony of appellant's forensic documents examiner.
 [II.] The trial court committed plain error by failing to instruct the jury that they must unanimously agree upon a single theory of culpability after instructing them that the offense of illegal processing of drug documents could be committed in more than one way.
 [III.] Appellant was rendered ineffective assistance of counsel when her attorney failed to object to the jury instructions as given.
On November 20, 1996, defendant was indicted by the Franklin County Grand Jury on one count of illegal processing of drug documents in violation of R.C. 2925.23. The indictment alleged that, on or about October 1, 1996, defendant intentionally made, uttered, sold, and/or knowingly possessed a false or forged prescription for Lortab, a Schedule III controlled substance.
In response to defendant's request for a bill of particulars, the state of Ohio informed defendant's counselt that the state was alleging the illegal processing of drug documents to have occurred at a Kroger Pharmacy located at 120 Robinwood Road in Columbus, Ohio. Otherwise, the bill of particulars provided no information over and above what was contained in the indictment.
In due course, the case proceeded to trial where the following evidence was presented. In early October 1996, Chuck Riepenhoff and Dorsey Woodward worked together as pharmacists at the Kroger Pharmacy. Both knew defendant and her husband, Don, as regular customers of the pharmacy. Riepenhoff was the pharmacist on duty when he was presented with a prescription for Lortab. Rienpenhoff could not recall either the exact date the prescription was presented, or whether it was defendant or her husband who presented the prescription; however, a store log identified by Woodward indicated that defendant signed for the prescription on October 3, 1996.
The prescription, dated September 30, 1996, was written for defendant and was purported to have been signed by Dr. Arlo Brakel. The prescription indicated five refills, the legal maximum allowed for a Lortab prescription. Riepenhoff logged the prescription into the pharmacy computer and filled it. However, in logging the prescription into the computer, Riepenhoff failed to enter the five refills.
Several days later, defendant asked to have the prescription refilled while Woodward was on duty. Because the computer records indicated no refills, Woodward pulled the original prescription to verify that refills were ordered. He then called Dr. Brakel's office to verify the prescription because "the five just did not appear to be exactly right." Dr. Brakel told Woodward that that he had not written the prescription and insisted that the incident be reported to the police. Accordingly, Riepenhoff contacted Columbus Police Detective William Folwarczny.
Detective Folwarczny began his investigation by asking defendant to come to police headquarters to be interviewed and to furnish a handwriting sample. During this meeting, defendant told the detective that the refill portion of the prescription was blank when she gave it to the pharmacist.
At trial, Dr. Brakel testified that he examined defendant in his office on August 28, 1996 and prescribed Soma, a muscle relaxant, as treatment for neck pain. According to Dr. Brakel, a pharmaceutical representative had supplied him with a small number of preprinted prescription forms for Lortab. The forms were kept out of sight in a drawer in one of the examination rooms, however, Dr. Brakel could not recall whether defendant was treated in the room where the preprinted prescription forms were kept. Dr. Brakel identified the September 30, 1996 prescription for Lortab and indicated that the signature on the prescription was not his. He further testified that he would never have ordered five refills for a controlled substance such as Lortab.
The jury found defendant guilty of illegal processing of drug documents. The court sentenced her to two years of community control and suspended her driver's license for six months. Defendant has timely appealed the conviction.
In her first assignment of error, defendant contends that the trial court erred in excluding the testimony of defendant's forensic documents examiner.
After the state presented its case, defense counsel indicated that he intended to call Vickie Willard, an expert in forensic documents examination, as defendant's only witness. Because Willard resided in Cleveland, she was not available to testify until the next morning. After the jury was excused for the evening, the prosecutor informed the court that he had previously contacted Willard, who told him that defense counsel had instructed her not to speak to the prosecutor. Although no written report had been prepared, the prosecutor believed that under Crim.R. 16 he was entitled to know the results of Willard's examination prior to Willard testifying to those results. The court initially agreed with the prosecutor. However, when trial resumed the following morning, the court ruled that the prosecutor was not entitled to disclosure of any information prior to Williard's testimony. In response to this ruling, the prosecutor entered an objection to Williard's testimony on the grounds that defendant had not been accused of forging the prescription.
Defense counsel argued that Williard's testimony was relevant because the state had brought the indictment against defendant on the basis that the prescription had been forged. To this argument, the court responded that it did not believe that the state was alleging that defendant forged the prescription; rather, the state's case was that defendant knowingly possessed a false or forged prescription and had it filled. The state reiterated that the indictment did not charge defendant with forging the prescription, but charged defendant with intentionally uttering a false or forged prescription and/or knowingly possessing a false or forged prescription. Ultimately, the state took the position that Willard's testimony would be a waste of time. The court agreed, adding that the testimony could also be misleading to the jury because defendant had not been accused of forging the prescription. The court ultimately ruled, over defense counsel's objection, that Willard's testimony could be proffered out of the presence of the jury.
According to Willard's proffer, she reviewed copies of both the prescription in question and the August 28, 1996, prescription for Soma written by Dr. Brakel. Willard also obtained samples of defendant's handwriting and compared those samples with the handwriting on the August 28, 1996 prescription and the handwriting on the forged prescription. Ultimately, Willard concluded that the handwriting on the forged prescription was a "simulation" of the writing on the August 28, 1996 prescription for Soma. Willard defined a "simulation" as "when somebody has a model or from memory they are familiar with a handwriting, and they reproduce somebody else's writing to the best of their recollection or to the best of their ability from drawing what they are seeing on a model." (Tr. 146.) Willard further testified that because the handwriting was a simulation, the writer of the prescription in question could not be identified. In other words, Willard could neither identify defendant as the person who wrote the prescription in question, nor exclude her as a person who may have written it.
To be relevant and therefore admissible, evidence, including expert testimony, must have a tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence." Evid.R. 401. Generally, an expert witness may testify if her opinion or testimony will aid the trier of fact in search of the truth. South Union Ltd. v. George Parker Assoc., AIA, Inc. (1985), 29 Ohio App.3d 197, 203. The Ohio Supreme Court has recognized the admissibility of handwriting expert testimony. Handwriting comparisons may be made by persons skilled in handwriting analysis when those persons examine otherwise unfamiliar writings in the course of an investigation. State v. Loza (1994), 71 Ohio St.3d 61, 76-77.
Even if relevant, expert testimony must be excluded under Evid.R. 403(A) "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." According to the Ohio Supreme Court, the question of whether testimony is confusing or misleading is a decision best left to the discretion of the trial court. Renfro v. Black (1990), 52 Ohio St.3d 27, 31. As such, trial courts have broad discretion in the admission or exclusion of evidence, and unless a court has clearly abused its discretion in a manner which materially prejudices a party, reviewing courts will be slow to interfere. State v. Maurer
(1984), 15 Ohio St.3d 239, 265, quoting State v. Hymore (1967),9 Ohio St.2d 122, 128. Thus, this court must affirm the trial court's ruling absent a showing that the trial court acted unreasonable, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
After reviewing the proffered evidence and applying the aforementioned legal principles, this court finds that the trial court did not abuse its discretion in excluding the testimony of Vicki Willard. Williard testified that the signature on the prescription in question was a simulation and, therefore, it would be impossible through handwriting analysis to determine who had actually copied the signature. The state's theory of the case was that defendant intentionally uttered and/or knowingly possessed a false or forged prescription, not that defendant herself forged the prescription. While Willard's testimony might have been marginally relevant to show that defendant did not know the prescription was false or forged, the court weighed the probative value of this testimony against the possibility that the jury would be misled into believing that defendant was charged with forging the prescription. The court then concluded that the probative value of the proffered evidence was substantially outweighed by the danger of confusion of the issues and misleading the jury. The trial court was well within its discretion to determine that Willard's testimony would have misled or confused the jury. Accordingly, we are unable to conclude that the trial court abused its discretion in excluding Willard's testimony under Evid.R. 403(A). As such, defendant's first assignment of error is overruled.
In her second assignment of error, defendant asserts the trial court erred when it failed to instruct the jury that its verdict must be unanimous. Specifically, although the court instructed the jury that it must reach an unanimous verdict, defendant argues that because the trial court's instructions to the jury presented four alternative theories of potential guilt, that the trial court was required to instruct the jury that a finding of guilt would have to be unanimous as to one of the four alternative theories.[1] In the absence of such an instruction, defendant claims that a less than unanimous verdict was possible since the jurors could have convicted defendant of the offense of illegal processing of drug documents based upon different underlying theories.[2] Although trial counsel failed to object to the charge given to the jury, defendant contends that reversal is warranted under the doctrine of plain error.
In support of her assignment of error, defendant relies uponUnited States v. Gipson (C.A. 5, 1977), 553 F.2d 453. Therein, the defendant was convicted under a federal statute which proscribed receiving, concealing, storing, bartering, selling or disposing of a stolen vehicle. During deliberation, the jury was told by the trial court that unanimity was not required so long as each juror was satisfied that the defendant was responsible under at least one of the alternative theories of culpability. On appeal, the appellate court reversed the trial court, finding that the instruction denied the defendant his right to an unanimous jury verdict.
In contrast, plaintiff directs our attention to the United States Supreme Court's decision in Schad v. Arizona (1991),501 U.S. 624; wherein, the court held that it is for the state courts to determine whether statutory alternatives are means of committing a single offense or constitute independent elements of a crime.
There is no question but that Ohio law requires jury unanimity in criminal verdicts. Crim.R. 31(A). On the unanimity issue, the prevailing rule in Ohio is that a general unanimity instruction, such as the one given in this case, will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual bases for liability. State v. Johnson (1989), 46 Ohio St.3d 96,105. Moreover, it is presumed that " 'when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged.' " Id.,
quoting Turner v. United States (1970), 396 U.S. 398, 420.
In Johnson, the Ohio Supreme Court explained that if a single count can be divided into two or more "distinct conceptual groupings," that a jury must be instructed that it must unanimously conclude that the defendant committed acts falling within one of the alternatives in order to reach a guilty verdict. Id. at 104. In contrast, if the jury is presented with a "single conceptual grouping of related facts," a general unanimity instruction will suffice. Id.
In this case, the alternatives presented to the jury alleged that defendant either intentionally uttered a false or forged prescription, or that defendant either knowingly possessed a false or forged prescription. Upon review, we find that the alternatives presented to the jury were alternative means of committing a single offense of processing of drug documents pursuant to R.C. 2925.23(B)(1), rather than two or more "distinct conceptual groupings." Additionally, it does not appear from the record that there was any potential for jury confusion. Being unable to conclude that the four alternatives presented to the jury constituted two or more distinct conceptual groupings, we overrule defendant's second assignment of error.
In her third assignment of error, defendant argues that she received ineffective assistance of counsel under the two-part test set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668. Defendant's third assignment of error is premised entirely upon defendant's claim that her trial counsel failed to object to the jury instruction discussed above. Having found no error in that instruction, defendant's third assignment of error is overruled.
Having overruled defendant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and KENNEDY, JJ., concur.
[1] The trial court instructed the jury as follows:
 The defendant is charged with illegal processing of drug documents. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the first day of October 1996, and in Franklin County, Ohio, the defendant intentionally uttered and/or knowingly possessed a false or forged prescription. (Tr. 170-171.)
[2] As noted, the court's instructions presented four alternatives to the jury, to wit:
(1) The defendant intentionally uttered a false prescription.
 (2) The defendant intentionally uttered a forged prescription.
(3) The defendant knowingly possessed a false prescription.
 (4) The defendant knowingly possessed a forged prescription.