OPINION
Defendant-appellant, Helen N. Carey, was charged with one count of felonious assault and two counts of patient abuse as a result of conduct at Good Shepherd Community Care Center on May 23, 1998. After trial before a jury, she was found guilty of felonious assault and one count of patient abuse, and sentenced to two years imprisonment for felonious assault and twelve months imprisonment for patient abuse to be served concurrently.
Defendant appeals, asserting the following assignments of error:
ASSIGNMENT OF ERROR NO. I
 THE TRIAL COURT IMPROPERLY ADMITTED EVIDENCE OF THE EXTENT AND SCOPE OF THE INVESTIGATION PRIOR TO THE INSTITUTION OF CHARGES AGAINST MS. CAREY.
 ASSIGNMENT OF ERROR NO. II
 THE TRIAL COURT ERRED WHEN IT ACCEPTED THE JURY'S VERDICT AS TO FELONIOUS ASSAULT WHICH WAS NOT SUPPORTED BY THE EVIDENCE.
 ASSIGNMENT OF ERROR NO. III
 THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY AS TO THE OFFENSE OF PATIENT ABUSE.
 ASSIGNMENT OF ERROR NO. IV
 THE TRIAL COURT'S ANSWER TO THE JURY'S QUESTION CONSTITUTED AN ABUSE OF DISCRETION.
On May 23, 1998, defendant was on duty as a licensed practical nurse at Good Shepherd Community Care Center. Robin Holley, a patient there, was an obese thirty-year-old female with a mentality described as from three to seven years old, with various psychological and health problems, and having the tendency to walk away from the home. On that day, defendant observed Holley leaving the premises and chased after her, giving rise to the events that led to the criminal charges involved herein.
Pam Hammonds, an environmental supervisor at the facility, stated that she observed defendant running after Holley, and knocking her down and kicking her. Holley was crying and not fighting back. Defendant was screaming at Holley, telling her several times that, "I'll kill you."
Mechelle Vickers, a registered nurse at the facility, saw defendant and Holley in the parking lot. Defendant was trying to drag Holley across the lot back into the facility. She said that defendant hit Holley in the face with an open hand. While Vickers was the nurse in charge over the Memorial Day weekend, it was her first time in charge and she did not know the procedure. She basically did nothing about reporting the events until the following day. Vickers said she was five months pregnant and was in shock, never having witnessed any violence like that, and that she did not intervene because she was afraid that defendant might hurt her or her unborn child. The next day, Vickers checked the victim and found that Holley had a tooth broken off at the gumline, as well as other marks of physical violence inflicted upon her.
Hayden Hinton, a nurse's aid at the facility, observed defendant choking Holley in the parking lot and telling her, "I'll kill you."
Larry Miller, a nurse's assistant, helped bring Holley back into the facility and put her in the elevator to take her up to her room. He said that he observed defendant ram one of Holley's slippers into her mouth hard, while she was in the elevator.
Lucinda Mays, a registered nurse at Good Shepherd who was away from the facility over Memorial Day weekend, returned to the facility on May 26, 1998. She described Holley as a person having a mentality of a three or four year old. Upon receiving a report of the activity, she observed Holley and arranged for a dental visit to extract the roots of the broken tooth. Pictures were presented, showing the broken tooth and other injuries to Holley.
Defendant denied that she had an intent to knowingly hurt or attempt to hurt Holley. She claimed that she saw no injuries on her and admitted only to the impropriety of yelling some of the things at Holley. She claims she was concerned that Holley might wander into traffic and get hurt.
Betty Rattler, a nursing assistant at Good Shepherd, said she saw little improper activity on the part of defendant, other than that she was pretty much out of control in the way she yelled at Holley.
Much of the defense was centered around the failure to call the police or a squad at the time of the incident, the failure to remove defendant from the premises at the time, if she did the things that were claimed, and the lapse of procedure at Good Shepherd in allowing Holley to escape on a number of other occasions. Whether or not these things are true, they have little to do with the guilt or innocence of defendant for the charges of felonious assault or patient abuse, other than to allow an inference that defendant's actions were not as bad as claimed.
Defendant's second assignment of error is that the jury's verdict of guilt of felonious assault was not supported by the evidence.
R.C. 2903.11, entitled "Felonious assault," provides as pertinent as follows:
(A) No person shall knowingly * * *:
(1) Cause serious physical harm to another * * *[.]
Serious physical harm is defined in R.C.2901.01(A)(5)(d), as pertinent as follows:
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement[.]
The question is whether a loss of a tooth is evidence from which a reasonable jury can find that there was a "permanent disfigurement." The defendant argues that a dentist could replace the tooth, thus alleviating any permanent disfigurement and that, as a matter of law, the loss does not constitute a permanent or serious temporary disfigurement. The evidence of possible replacement could be considered by the jury in deciding this issue. However, the technological or physical possibility that an injury may be hidden by the use of prosthetic or replacement parts does not eliminate a reasonable juror from finding that the victim suffered a permanent disfigurement.
There was ample evidence to prove that defendant struck the victim causing her to have a tooth broken off at the roots which had to be removed, and that the injury was a permanent or serious temporary disfigurement.
Defendant's second assignment of error is overruled.
In her third assignment of error, defendant contends that the trial court erred when it instructed the jury as to the offense of patient abuse.
She specifically contends that, when there are alternative ways to prove a crime, the jury must be instructed that it must agree unanimously as to the same alternative before they can find defendant guilty.
Defendant was tried for two counts of patient abuse in violation of R.C. 2903.34. The term "abuse" is defined in R.C.2903.33(B) as follows:
 (B) "Abuse" means knowingly causing physical harm or recklessly causing serious physical harm * * *.
Thus, there are two alternative types of proof that can result in a finding of patient abuse, either knowingly causing physical harm or recklessly causing serious physical harm. The trial court charged the jury, as follows, concerning the alternative ways of proving defendant guilty of patient abuse:
 [THE COURT:] So let me recapitulate, if you will. The charge of patient abuse may be committed in two different ways. In the alternative, it may be committed by either knowingly causing physical harm to a person or it may be committed by recklessly causing serious physical harm to that person by physical contact with the individual. * * *
But, further on in the instructions, the court discussed the verdicts and the finding of guilt or innocence as follows:
 [THE COURT:] Now, I mentioned earlier — and I want to stress this — some of the offenses which were defined provide alternative ways of committing the offense. As I said, there are two ways you can commit, for example, the offense of patient abuse, either knowingly causing physical harm or recklessly causing serious physical harm.
 Before you can find the Defendant guilty of an offense which provides alternative ways of committing that offense, you must be unanimous in your verdict as to any one alternative. * * *
The trial court complied with defendant's request and there was no objection to the charge given. Apparently, appellant's counsel failed to note the segment of the charge indicated above.
We need not decide whether this situation is one where a general unanimity instruction will ensure that the jury is unanimous on the factual bases for a conviction even where an indictment alleges numerous factual basis for criminal liability, or whether this is a single count that can be divided into two or more distinct constructional groupings where the jury must be instructed specifically that it must unanimously conclude that the defendant's acts fall within one such grouping in order to reach a jury verdict and we decline to do so. It does appear, however, that State v. Johnson (1989), 46 Ohio St.3d 96, supports a finding that, in this case, the jury was faced with a single conceptional grouping of related facts, rather than two or more distinct conceptional groupings, and that a general unanimity instruction would have been sufficient.
Defendant's third assignment of error is overruled.
Defendant fourthly asserts that the trial court's answer to a question of the jury constituted an abuse of discretion. Defendant was charged with two counts of patient abuse; one apparently being related to the parking lot incident, and the other related to the incident in the elevator, which followed soon thereafter. The jury, during the course of its deliberations, submitted the following questions to the court:
 * * * "Does count two pertain to the incident in the parking lot only, does count three pertain to the elevator incident only." * * *
After discussion with counsel and upon agreement of the parties, the trial court instructed the jury as follows:
 [THE COURT:] * * * [C]ount two and count three allege separate — totally separate incidents. They don't overlap at all. Okay? You'll have to determine whether there are facts to support each or not [sic] facts to support each, but they are two separate allegations.
The trial court's instruction was clear and agreed to by defense counsel. It also appears that the jury understood the instruction and used it to the benefit of defendant by finding her guilty of only one count of patient abuse because the incidents were not totally separate.
The trial court did not commit error in the way that it answered the jury's question.
Appellant's fourth assignment of error is overruled.
Defendant's first assignment of error is that the trial court improperly admitted evidence of the extent and scope of the investigation prior to the institution of charges against defendant.
During opening statement, defense counsel stated as follows:
 FIRST OF ALL, THE EVIDENCE WILL BE — YOU'VE HEARD THESE THEORIES OF ALL THIS OUTRAGEOUS CONDUCT BY MY CLIENT. THE EVIDENCE WILL BE THAT NOBODY CALLED THE POLICE, AND THAT AS A RESULT OF WHAT MISS CAREY ALLEGEDLY DID, THE POLICE WERE NOT INVOLVED IN THIS. THEY DIDN'T DO ANY INVESTIGATION.
 IN FACT, THERE WAS A LACK OF ANY IMMEDIATE ACTION. IN FACT, HELEN CAREY IS AT THE SAME NURSING HOME THE NEXT DAY AFTER THIS INCIDENT AND THE DAY AFTER AND POTENTIALLY CAN BE CARING FOR ROBIN HOLLEY, SO THERE IS NO IMMEDIATE ACTION OF ANY TYPE UNDERTAKEN BY THE GOVERNMENT, EITHER IN TERMS OF AN EXTENSIVE INVESTIGATION OR POLICE INVOLVEMENT.
* * *
 ADDITIONALLY, THERE WILL BE SOME EVIDENCE AS TO WHEN THE FRANKLIN COUNTY PROSECUTOR'S OFFICE, WHO HAVE INDICTED MY CLIENT ON THESE MOST SERIOUS CHARGES, BECAME INVOLVED IN IT. AND I THINK YOU'LL HEAR FROM THE WITNESSES THAT TESTIFY, IT WAS VERY, VERY LATE IN THE GAME. THERE IS NO POLICE INVOLVEMENT. THERE IS NO PROSECUTOR'S INVOLVEMENT IN THIS CASE UNTIL THIS LITTLE SNOWBALL IS ROLLING DOWN THE HILL AND GATHERING UP MOMENTUM.
 WHAT HAPPENED HERE IS THAT THERE'S AN INVOLVEMENT OF THE NURSING BOARD AND THE DEPARTMENT OF HUMAN SERVICES * * *.
* * *
 SO THERE IS SOME INVOLVEMENT IN THE NURSING BOARD AND DEPARTMENT OF HUMAN SERVICES IN THIS. MY CLIENT LOST HER JOB, AND THERE IS AN ONGOING MATTER REGARDING HER LICENSE, BUT THAT HAS NOTHING TO DO WITH THE CRIMINAL CHARGES DIRECTLY. * * *
To counter a major theme in defendant's case, which was that the case was poorly investigated and of no substance, the state produced as their first witness Thomas Michael Millay, a special agent with the Attorney General's Office charged with the responsibility of investigating abuse and neglect in nursing homes throughout the state of Ohio. He was a man who was in the Columbus Police Department for twenty-seven years and retired about two years prior to the trial. Without objection, he described the way investigations are made, which constituted interviewing witnesses and a recommendation as to whether there is probable cause to go forward with the investigation, which is then reviewed by an attorney assigned to the case, by a section chief for approval, and then by the county prosecutor who makes a decision as to whether the case should be presented to the grand jury. The above testimony was admitted without objection.
Defense counsel objected to a comparison of the process used by the Columbus Police Department in preparing a case to the way that a case of patient abuse was prepared, as in the instant case. Out of the presence of the jury, the court discussed the objection with counsel and stated that his concern would be that he did not want the jury to have the impression that other people, such as attorneys, have given the opinion that defendant is guilty of something. The court ruled that the prosecutor had a right to respond to what defense counsel had raised as an issue in the opening statement concerning lack of police involvement or a proper investigation, but that he wanted it kept short. Over objection, the witness was allowed to answer that the only difference is that the Columbus Police Department's investigation is overseen by a sergeant, lieutenant and commander, and that the Attorney General's investigation is overseen by attorneys in the office. Millay then stated the nature of the investigation that was conducted.
Defendant is correct in noting that it is not the type of investigation that is conducted that proves defendant's guilt, but the evidence presented to the jury by the witnesses in the case. However, since the defendant had made an issue that the police were not involved and that the charges were brought without any kind of proper contemporary investigation, the state was permitted to explain the type of investigation that was made. Within its discretion, the trial court limited the testimony to prevent any impression other than what inferentially follows after any police investigation, that someone had determined that defendant was guilty. There was only a relatively minor objection by defense counsel to the testimony, much of which occurred before the first objection as to relevancy was made, and the testimony thereafter did not add significantly to what had been explained before.
We find no prejudicial error on the part of the trial court in ruling upon objections posed to the court about Millay's investigation.
Defendant's first assignment of error is overruled.
Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 _____________________________ JUDGE McCORMAC
PETREE and BROWN, JJ., concur.