JOURNAL ENTRY and OPINION.
{¶ 1} Appellant Saied Hamad appeals from his convictions for assault of a peace officer and intimidation. On appeal, he assigns the following errors for our review:
 {¶ 2} "I. The underlying convictions are against the manifest weight of the evidence as the appellant was not capable of acting with the requisite mens rea to commit the offenses."
 {¶ 3} "II. The conviction of intimidation is void in the instant case as the deficient indictment and jury instruction allowed the appellant to be convicted with a non-unanimous jury verdict."
 {¶ 4} "III. Trial counsel was ineffective for failing to request a unanimity jury instruction."
 {¶ 5} Having reviewed the record and pertinent law, we affirm Hamad's convictions. The apposite facts follow.
 {¶ 6} The grand jury indicted Hamad on four counts, two counts for assault of a peace officer, one count for attempted assault of a peace officer, and one count for intimidation. Hamad entered a not guilty plea and the matter proceeded to a jury trial, where the following evidence was presented.
 {¶ 7} During the early morning hours of July 29, 2001, Hamad was at the bar, Shooter's, with a friend drinking. Eventually, Hamad was escorted out of the bar and was not permitted to return.
 {¶ 8} Kara Tobias and Jeff Elliot testified they were talking to an officer in front of the building about a situation with a bouncer. As they were talking to the officer, they saw a man, whom they identified in court as Hamad, yelling at the officer within inches of his face. The officer calmly told him several times to quiet down and sit down and wait for his ride. According to Tobias and Elliott, Hamad appeared to be inebriated and was informing the officer that he was a law student and that the officer could not do this to him and threatened to have him fired because he worked for Betty Montgomery's office.
 {¶ 9} According to Elliot and Tobias, ten to fifteen minutes later, they saw officers attempting to arrest Hamad. Elliot testified that the officers appeared professional at all times in dealing with Hamad, and that Hamad was verbally abusive the entire time.
 {¶ 10} Three police officers, Officers Benz, Dunn, and Sedlak, were working security in the area and testified that Hamad was obviously intoxicated at the time. The officers also testified that Hamad attempted to return to the bar and became belligerent, combative and argumentative when they told him to leave. He threatened all of the officers that he was a law student, worked for Betty Montgomery and knew Senator Gephardt, and would have them all fired. The officers several times directed Hamad to leave and warned he would be arrested if he did not settle down and leave.
 {¶ 11} At one point, Officer Dunn informed Hamad he was under arrest. According to Officer Dunn, at that point, Hamad took a swing at him, but missed. The officer then forced Hamad to the ground and the other officers assisted in handcuffing him. With difficulty, the officers got Hamad into the back of a squad car, driven by Officers Huff and Kornatowski. According to the officers, Hamad continued to be verbally abusive and began thrashing his body around the back of the vehicle and attempted to kick-out the windows.
 {¶ 12} The officers then called their supervisor, Lt. Cerba to come to the scene, since they had to use force in arresting Hamad. All the while, Hamad continued threatening the officers that he would have them all fired because of his political connections. The officers told Hamad repeatedly to settle down and not to injure himself or the car, but he ignored their pleas.
 {¶ 13} When Lt. Cerba arrived at the scene and witnessed Hamad's behavior, he decided that Hamad's legs needed to be tethered so he did not injure himself or the car. As the Lt. tethered Hamad's legs, Hamad head-butted the Lt., knocking the officer's hat off and breaking his glasses. The officer then saw Hamad getting ready to head-butt him again, so he punched Hamad once in the face, so he could stun Hamad and exit the vehicle. Hamad thereafter, continued hitting his head against the window.
 {¶ 14} While Officers Huff and Kornatowski transported Hamad to the station for booking, he continued to threaten the officers and told them once he got out of the car, he would beat them up. Anticipating a struggle at the station, the officers called ahead for assistance, and institutional guard Luz Rodriquez was sent down to meet them. Officer Huff escorted Hamad from the car and as they walked to the elevator, Hamad kicked Officer Huff in the groin, causing the officer to lose his grip and fall to the ground. Officer Kornatowski hurriedly helped Rodriquez maintain a hold on Hamad, where he was then taken into the station.
 {¶ 15} Several witnesses testified to the hostile, combative behavior of Hamad and one witness corroborated Officer Dunn's testimony that Hamad attempted to hit him when he was placing Hamad under arrest.
 {¶ 16} In his defense, Hamad presented several witnesses who testified that it would be out of character for Hamad to act hostile or drink too much.
 {¶ 17} The defense also presented expert testimony from Dr. Comony who testified that after reviewing Hamad's medical records, it was "very probable" that Hamad suffered a concussion from a blow to the head. It was his opinion that a fall to the ground could not have caused the injury, but blunt force by an object caused the injury. He testified that generally people that suffer a concussion suffer from amnesia, bizarre behavior, or having a lack of perception of what one was doing. He opined that it was "likely" that Hamad was not "in his senses" after receiving the blow to his face.
 {¶ 18} On cross-examination, however, when the doctor was apprised of Hamad's violent behavior prior to the blow to the head and the fact he was intoxicated, the doctor stated that if this were true, it was his opinion that the blow to the head did not cause the abnormal behavior, but it was more likely the alcohol did.
 {¶ 19} Hamad testified in his own behalf and denied being intoxicated. He admitted to being disrespectful to the police, but believed under the circumstances, his disrespect was appropriate. He claimed no memory of why he was removed from the bar. He did recall the officer telling him he had to leave, and he told the officer he wanted to wait for his friend because the bar was almost closing. He recalls that after making disrespectful comments to the officer, he was slammed to the ground. According to Hamad, he remembered nothing thereafter until he woke up in jail. The jury found Hamad not guilty of assaulting Lt. Cerba and Officer Dunn, but guilty of assaulting Officer Huff. He was also found guilty of intimidation. The trial court sentenced Hamad to three years community control sanction.
 {¶ 20} In his first assigned error, Hamad argues his convictions were against the manifest weight of the evidence because he did not have the requisite mens rea of "knowingly" committing the acts required for assault of a peace officer pursuant to R.C. 2903.13 and intimidation pursuant to R.C. 2921.03.
 {¶ 21} "Knowingly" is defined pursuant to R.C. 2901.22(B) as:
 {¶ 22} "A person acts knowingly, regardless of his purpose when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 23} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 24} "The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239."[1]
 {¶ 25} In arguing that he did not have the mental culpability to commit the offenses, Hamad points to the testimony of his expert, Dr. Conomy, who testified that the possible effects of a cerebral concussion were that the person does not "know what he is doing," and suffers "amnesia" and that Dr. Conomy testified that it was "very likely" that Hamad was not "in his senses." Hamad also argues that he, himself, testified that he could not recall anything after being pushed to the ground.
 {¶ 26} Although Dr. Comony did testify on direct examination that it was "very likely" that Hamad was not "in his senses" at the time he committed the assault, he changed this opinion on cross examination when he was informed of the fact that Hamad was acting irrationally prior to the blow to the head and was intoxicated. After being informed of this, the doctor stated if this were true, it was his opinion that the blow to the head was not the cause of the abnormal behavior, but it was more likely the alcohol was the cause.
 {¶ 27} Indeed, the evidence presented indicated that Hamad was combative and argumentative during the entire time he was with the officers and not just after the blow to his head. There was also no evidence that Hamad for sure had sustained a concussion. His medical records only indicated he had a fracture to the jaw and eye area of his face and Dr. Comony stated that it was "probable" he suffered a concussion.
 {¶ 28} Given the evidence, it was within the jury's discretion to determine whether the alcohol or blow to the head was the cause of Hamad's combative behavior.
 {¶ 29} Hamad's first assigned error is overruled.
 {¶ 30} In his second assigned error, Hamad argues that the trial court erred by failing to instruct the jury that it must unanimously agree as to which victim under the intimidation charge applied in order to find Hamad guilty of intimidation.
 {¶ 31} We initially note that no objections were made regarding the jury instructions. "Failure to object to a jury instruction constitutes a waiver and any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise."[2] In State v. Williford[3] the Ohio Supreme Court found that "we have repeatedly held that a failure to object before the jury retires in accordance with the second paragraph of Crim.R. 30(A), absent plain error, constitutes a waiver." Hamad has failed to show that the jury instructions constitute plain error.
 {¶ 32} In the instant case, the trial court gave a general unanimity instruction to the jury. The prevailing rule in Ohio is that a general unanimity instruction, such as the one given in this case, will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual basis for liability.[4] Moreover, it is presumed that "`when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged.'"[5]
 {¶ 33} In the instant case, the evidence presented was sufficient to find Hamad guilty of intimidation regarding all of the victims because he threatened to beat the officers and have all of them fired due to his political connections. It is inconceivable, based on the facts of this case, the jury would find Hamad not guilty of intimidation against any of the victims.
 {¶ 34} We, therefore, find no plain error because the outcome of the trial would not have been different if the jury was instructed differently.[6]
 {¶ 35} Hamad's second assigned error is overruled.
 {¶ 36} In his third assigned error, Hamad argues that his counsel was ineffective for failing to object to the trial court's failure to instruct the jury on the requirement of unanimity in finding guilt on the intimidation charge.
 {¶ 37} Because we find the second assigned error is without merit, we logically conclude that Hamad's attorney's representation did not fall below an objective standard of representation.
 {¶ 38} Hamad's third assigned error is overruled.
Judgment affirmed.
SEAN C. GALLAGHER, J., and ANTHONY O. CALABRESE, JR., J., concur.
[1] State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, Statev. Jenks (1991), 61 Ohio St.3d 259, 273.
[2] State v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
[3] (1990), 49 Ohio St.3d 247, 251.
[4] State v. Johnson (1989), 46 Ohio St.3d 96, 105.
[5] Id., quoting Turner v. United States (1970), 396 U.S. 398, 420,24 L.Ed.2d 610, 90 S.Ct. 642.
[6] We note that it would have been better practice for the indictment to contain three separate counts for intimidation since three different victims were involved.