OPINION
Defendant-appellant Ndiaye Tidiane appeals his conviction and sentence from the Delaware County Court of Common Pleas on one count each of kidnapping, abduction and attempted rape. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On July 27, 2001, the Delaware County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, one count of kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree, and one count of abduction in violation of R.C. 2905.05(A)(2), a felony of the third degree. At his arraignment on August 6, 2001, appellant entered a plea of not guilty to the charges contained in the indictment.
Thereafter, a jury trial commenced on October 16, 2001. The following evidence was adduced at trial.
On May 15, 2001, Holly Fink, age 16, walked to the IGA, a grocery store around the corner from her house, after having an argument with her mother. After calling her boyfriend on the telephone, Holly went behind the IGA and started walking home. Holly testified that while she was behind the IGA, "[a] guy in a gold car stopped and asked me if I needed a ride and asked me if I was all right, because I was kind of upset." Transcript at 129. Although she initially declined the man's offer, Holly then agreed to accept a ride since she wanted to get home quickly. Holly identified the driver as appellant.
After appellant drove in the opposite direction from her house, Holly asked appellant where they were going. While appellant initially told her that he had to pick up something for his job, he subsequently told Holly that they were going to his house. During the drive, appellant kept touching Holly's hand and, when she attempted to move her hand away, would grab onto and kiss her hand. Holly, who told appellant that she had a boyfriend, testified that she did not make an effort to get out of appellant's car since she was scared and did not want to jump from a moving vehicle.
When the two arrived at appellant's apartment, Holly, who did not know anyone in the area, followed appellant into his apartment and then his bedroom. As appellant and Holly sat on his bed, appellant began kissing her and running his hands through her hair. After appellant started kissing her "all over", Holly told appellant that she "didn't want to do this." Transcript at 136. The following testimony was adduced when Holly was asked what happened next:
 "A. And then I was sitting down on the bed and he leaned me back and unbuttoned my pants, and put his hand down my pants.
 "Q. And when he put his hand down your pants, what were you wearing, other than your pants?
"A. Just my pants and my underwear.
 "Q. Did he put his hands in between your pants and your underwear?
"A. No, all the way inside everything.
 "Q. And when he put his hand there, what did he do with his hand?
"A. He put his fingers inside of me.
 "Q. I need to ask you to be specific, here. Where, exactly, did he put his fingers?
"A. Inside my private area.
"Q. Inside your vagina?
"A. Yeah.
"Q. And how long was that taking place?
"A. I don't know exactly how long, but —
"Q. What was your reaction to this?
 "A. I don't know. I was just scared, and I just told him — he kept kissing me, so I couldn't really talk. And I just said, `I don't want to do this,' over and over. And I like kind of pushed him away. And that's when his brother, I think it was, walked in.
 "Q. When you were on the bed, he had his hand down inside your pants, where was his other hand?
 "A. It was like up kind of by my head, I think, where my hair was." Transcript at 136-137.
Holly testified that once appellant's brother left the room, appellant "came over to me and he started kissing me again, and like he pushed me down on the bed, and was just on top of me." Transcript at 138. Appellant then took off both Holly's pants and his own pants. While Holly told appellant that she didn't want to proceed, appellant told her "I know you don't want to do this, but its okay. Just close your eyes and it's all right." Transcript at 139-140. Appellant then "kept shoving his body" in an attempt to penetrate Holly. Transcript at 140. As appellant kept trying to penetrate her, Holly kept moving away and telling appellant to stop. Eventually, appellant stopped attempting to have intercourse with Holly and dropped her off where he had found her behind the IGA.
When she got home, Holly, who was hysterical, told her mother what had happened and also telephoned her boyfriend. Detective Jason Wampler of the Sunbury Police Department obtained a statement from Holly before the matter was turned over to the Delaware County Sheriff's Office. Holly was then interviewed by Detective Sam Keckler of the Delaware County Sheriff's Office. Holly told the police that the man who had picked her up behind the IGA had a scar on his left hand. Subsequently, after Holly and her mother saw appellant's car again and gave the license plate number to the police, appellant was arrested. Photographs of appellant's hand that were admitted at trial showed that appellant has a scar on his left hand.
At the conclusion of the evidence and the end of deliberations, the jury, on October 17, 2001, found appellant guilty of kidnapping in violation of R.C. 2905.01(A)(4), abduction in violation of R.C.2905.02(A)(2) and the lesser included offense of attempted rape in violation of R.C. 2923.02 and R.C. 2907.02(A)(2).
Appellant, on October 29, 2001, filed a "Motion for Acquittal — New Trial", arguing, in part, as follows:
 ". . . That is, the count of rape, digital penetration, for which the defendant was indicted, was not the activity for which the jury requested the special reading of the testimony of Holly Fink but was instead a separate and distinct incident for which the defendant was not indicted. The defendant was not indicted for attempted rape during the course of the activity between the defendant and Holly Fink that evening. The rape was the digital penetration alleged in the indictment, but there was no charge [of] attempted rape. Clearly, therefore, the jury found the defendant guilty of an attempted rape for a incident for which he was not indicted and therefor it can not be a lesser-included offense of the rape charge in the indictment."
After denying appellant's motion, the trial court, as memorialized in a Judgment Entry filed on November 21, 2001, sentenced appellant to an aggregate three year prison sentence. In addition, in a separate entry, the trial court adjudicated appellant a sexually-oriented offender.
It is from the trial court's November 21, 2001, Judgment Entry of Sentence that appellant now appeals, raising the following assignments of error:
 "1. THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SEC. 10 OF THE OHIO CONSTITUTION WHEN IT FAILED TO PROPERLY INSTRUCT THE JURY REGARDING THE LESSER INCLUDED OFFENSE OF ATTEMPTED RAPE WITH AN AUGMENTED UNANIMITY JURY INSTRUCTION."
 "2. THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SEC. 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT FINDING APPELLANT GUILTY OF ATTEMPTED RAPE AS SAID VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "3. THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SEC. 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT FINDING APPELLANT GUILTY OF KIDNAPPING AS SAID VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "4. THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SEC. 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "5. THE COURT SUB JUDICE ABUSED ITS DISCRETION IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SEC. 10 OF THE OHIO CONSTITUTION WHEN IT PERMITTED HEARSAY EVIDENCE DURING THE TESTIMONY OF ANGELA FINK AS SAID EVIDENCE IS NOT WITHIN THE HEARSAY EXCEPTIONS ELUCIDATED WITHIN O.EVID.R. 801 AND IS IN VIOLATION OF EVID.R. 805."
 "6. THE COURT SUB JUDICE ABUSED ITS DISCRETION WHEN IT REFUSED APPELLANT'S REQUEST FOR THE GRAND JURY TESTIMONY OF MS. FINK."
 I
Appellant, in his first assignment of error, argues that the trial court erred in failing to provide the jury with a general unanimity instruction concerning the charge of attempted rape. According to appellant, since appellee presented evidence regarding alternative theories as to how appellant attempted to rape Holly, the trial court should have given an unanimity jury instruction. Appellant further contends that since the trial court failed to give such an instruction, some jurors may have found appellant guilty of attempted digital rape while others may have found appellant guilty of attempted penile rape. Since trial counsel failed to object to the jury instructions as given, all error is waived but plain error. State v. Bey, 85 Ohio St.3d 487,497, 1999-Ohio-283, 497, 709 N.E.2d 484. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus, State v. D'Ambrosio, 67 Ohio St.3d 185,191, 1993-Ohio-170, 616 N.E.2d 909.
Appellant argues that the trial court erred in failing to instruct the jury, via an augmented jury instruction, that it must unanimously conclude that either appellant attempted to penetrate Holly with appellant's fingers or that appellant attempted to penetrate Holly with appellant's penis. Appellant further argues that such failure resulted in a manifest miscarriage of justice. We do not concur.
As is stated above, appellant was indicted on one count of rape in violation of R.C. 2907.02(A)(2). The indictment specifically alleged that appellant had engaged in sexual conduct with the victim and that he purposely compelled his victim to submit by force or threat of force. The trial court, in this matter, instructed the jury as follows:
 "The defendant is charged in count three of the indictment with rape. Before can [sic] you find the defendant guilty, you must find beyond a reasonable doubt that:
 "One, on or about the 15th day of May, 2001, in Delaware County and Franklin Counties, Ohio;
"The defendant — two, the defendant Ndiaye Tidiane;
"Three, engaged in sexual conduct with Holly Fink;
 "Four, and purposely compelled Holly Fink to submit by force or threat of force.
 "`Purpose,' `force,' `threat,' `privilege,' and `sexual conduct,' have previously been defined for you.
 "A victim need not prove physical resistance to the offender.
 "If you find the State proved, beyond a reasonable doubt, all of the essential elements of the offense or rape as charged in count three of the indictment, then it will be the duty of this jury to find the defendant guilty of rape.
 "However, if you find that the State failed to prove beyond a reasonable doubt all of the essential elements of the offense of rape, then your verdict must be not guilty of that offense; and in that event, you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all of the essential elements of the lesser included offense of attempted rape.
 "If all of you are unable to agree on a verdict of either guilty or not guilty of rape, then you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all of the essential elements of the lesser included offense of attempted rape.
 "The offense of attempted rape is distinguished from rape by the failure of proof of sexual conduct.
 "A `criminal attempt' is when one purposely does or fails to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose.
 "Before you can find the defendant guilty of attempted rape, you must find beyond a reasonable doubt that:
 "One, on or about the 15th day of May, 2001, in Delaware and Franklin Counties, Ohio;
"Two, the defendant, Ndiaye Tidiane;
 "Three, purposely engaged in conduct which if successful would have resulted in the offense of rape.
 "`Purposely' and `offense of rape' have previously been defined for you.
 "If you find the State proved beyond a reasonable doubt all of the essential elements of the offense of — of the lesser included offense of attempted rape, your verdict must be guilty of attempted rape.
 "However, if you find that the State failed to prove beyond a reasonable doubt all of the essential elements of the lesser included offense of attempted rape, then your verdict must be not guilty of that offense. . . ." Transcript at 334-336.
Appellant contends that such instruction constitutes reversible error since it fails to clearly instruct the jury that it must be unanimous regarding whether appellant attempted to rape Holly by means of his finger or by means of his penis.
In State v. Johnson (1989), 46 Ohio St.3d 96, 104, 545 N.E.2d 636, the Ohio Supreme Court held that, if a single count can be divided into two or more "distinct conceptual groupings," the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict. In Johnson, the defendant was indicted for aggravated murder. The indictment against him alleged numerous factual bases for criminal liability, and Johnson argued some of the jurors could have found that he committed murder while committing aggravated robbery, while others might believe he committed murder during an attempt to commit aggravated robbery or, in the alternative, while fleeing after an actual or attempted robbery. The Supreme Court conceded that, under some circumstances, a single count could be divided into two or more distinct conceptual groupings", and, in such case, the jury must be specifically instructed on the findings it must unanimously make in order to reach its verdict. However, in Johnson, the Supreme Court found the factual scenario facing the jury was a "single conceptual grouping of related facts" rather than two or more distinct conceptual groupings. The Court, in Johnson, cited with approval United States v. Beros (C.A.3, 1987),833 F.2d 455, 461, in which the Third Circuit Court of Appeals held that where there appears a possibility of jury confusion in light of the allegations made and the statute charged, an augmented general instruction may be necessary to ensure that the jury understands its duty to unanimously agree to a particular set of facts. Johnson, supra, at 104-5.
We find that the jury in this matter was presented with a "single conceptual grouping" of related facts rather than two or more "distinct conceptual groupings" under Johnson, supra. The victim's allegations in this case arose out of single event, closely related in time, place and motive. See State v. Jenkins (Oct. 16, 1995), Stark App. No. 95CA0155, and State v. Smith (March 3, 1997), Stark App. No. 1996CA00245. In short, upon our review of the record, we find that the jury was presented with "alternative means of committing a single offense" of attempted rape rather than distinct conceptual groupings. See State v. Smark (June 29, 1999), Franklin App. No. 98AP-845. Therefore, a less than unanimous verdict was not possible. Furthermore, we find no reason to believe that the jury was confused or rendered less than a unanimous verdict. SeeJenkins, supra.
Appellant's first assignment of error is, therefore, overruled.
 II, III, IV
Appellant, in his second, third and fourth assignments of error, argues that his conviction for kidnapping in violation of R.C. 2905.01(A)(4), abduction in violation of R.C. 2905.02(A)(2) and the lesser included offense of attempted rape in violation of R.C. 2923.02 and R.C.2907.02(A)(2) are against the manifest weight of the evidence. We disagree.
In reviewing whether a conviction is against the manifest weight of the evidence, our standard of review is stated as follows: The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin
(1983), 20 Ohio App.3d 172, 485 N.E.2d 717. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
Appellant was convicted of attempted rape in violation of R.C. 2923.02
and R.C. 2907.02(A)(2). R.C. 2923.02 states, in relevant part, as follows: (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense. Pursuant to R.C. 2907.02(A)(2) "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" is defined in R.C. 2907.01 as follows:
 "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
Appellant was also convicted of kidnapping in violation of R.C. 2905.01
and abduction in violation of R.C., 2905.02. R.C. 2905.01 states, in relevant part, as follows:
 "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;
In turn, R.C. 2905.02 provides, in pertinent part, as follows:
 "(A) No person, without privilege to do so, shall knowingly do any of the following:
 "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear;"
Upon our review of the record, we cannot say that the jury, by convicting appellant of attempted rape, kidnapping and abduction, lost its way so as to create a manifest miscarriage of justice. As is set forth above, Holly testified that she accepted a ride from appellant because he told her that he would drive her home. However, appellant deceived Holly and instead of driving her home, appellant proceeded to drive Holly to his apartment despite her requests that appellant take her home. At trial, Holly testified that, during the ride, appellant held onto to her hand and that when she would move her hand away, appellant "would grab onto my hand and kiss my hand or something." Transcript at 133. When asked why she did not attempt to get out of appellant's car, Ms. Fink testified that she was "scared" and "didn't know what to do." Transcript at 132.
In addition, testimony was adduced at trial that once appellant got Holly into his apartment, he digitally penetrated her vagina and also attempted to have sexual intercourse with her. Holly testified that, while holding her hands back, appellant removed her pants, pulled her underwear aside, and "push[ed] himself to try to get in me." Transcript at 141. During the above incidents, Holly told appellant that she did not want to engage in sexual activity with him.
Based on the foregoing facts, we find that the jury was presented with sufficient evidence that appellant attempted to purposely engage in conduct that, if successful, would have resulted in sexual conduct with Holly by purposely compelling submission of Holly by force or threat of force. There was also competent and credible evidence that appellant attempted to restrain the liberty of Holly to engage in sexual activity and that appellant, by deception, removed Holly from the place where she was found or restrained her liberty with the purpose of engaging in sexual activity with her. While appellant argues that Holly's story is rife with inconsistencies "as to completely impeach its reliability", we note that the jury, as trier of fact, was in the best position to assess her credibility. Clearly, the jury found Holly to be a credible witness. In short, we cannot say that the jury, in convicting appellant, lost its way so as to create a miscarriage of justice.
Appellant's second, third and fourth assignments of error are, therefore, overruled.
 V
Appellant, in his fifth assignment of error, maintains that the trial court, abused its discretion when it permitted hearsay testimony during the testimony of Angela Fink, Holly Fink's mother, since the same does not fall within the hearsay exceptions elucidated within Evid.R. 801 and is in violation of Evid.R.805. At trial, appellant had objected to Angela Fink's testimony, arguing that it constituted hearsay.
A trial court has broad discretion to admit evidence and an appellate court will not disturb a trial court's decision unless the trial court has abused its discretion and the defendant has been materially prejudiced. State v. Long (1978), 53 Ohio St.2d 91, 98, 372 N.E.2d 804. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd., 66 Ohio St.3d 619, 621,1993-Ohio-122, 614 N.E.2d 748. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Appellant, in his fifth assignment of error, initially argues that the trial court erred in permitting Angela Fink to testify regarding what Holly, her daughter, told her when Holly returned from the IGA after being dropped off by appellant on May 15, 2001.
Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible unless otherwise provided by law. Evid.R. 802. "To be admissible under the exception contained in Evid.R. 803(2) as an excited utterance, a statement must concern `some occurrence startling enough to produce a nervous excitement in the declarant', which occurrence the declarant had an opportunity to observe, and must be made before there had been time for such nervous excitement to lose domination over his reflective faculties." State v. Simko, 71 Ohio St.3d 483, 490,1994-Ohio-350, 644 N.E.2d 345. There is no per se amount of time after which a statement can no longer be considered an excited utterance; the central requirement is that the statement must be made while the declarant is still under the stress of the event, and the statement may not be a result of reflective thought. State v. Taylor (1993),66 Ohio St.3d 295, 612 N.E.2d 316.
We find that the court did not abuse its discretion in admitting Holly Fink's statement to her mother as an excited utterance. When asked during trial what she did after she got home from the IGA right after appellant dropped her off, Holly responded as follows: "Well, I was crying and my mom was feeding the dogs in the backyard and I — I was just like out of breath and crying and trying to tell her what happened, . . ." Transcript at 145. Angela Fink, Holly's mother, testified that her daughter was "hysterical" and was "screaming"and came "flying through the garage door into the back yard". Transcript at 104.
Based on the foregoing, we find that Holly Fink's statements to her mother are admissible under the excited utterance exception contained in Evid.R. 803(2). Holly Fink, the victim herein, was directly involved in the startling events of attempted rape, kidnapping and abduction. Holly's statements to her mother were made immediately after the startling events while Holly was still under the stress of the same. There was little time for reflective thought between the time of the attempted rape, abduction and kidnapping and the time that Holly spoke to her mother. We find, therefore, that the statements were admissible pursuant to Evid.R. 803(2) as excited utterances.
Appellant, in his brief, further argues that assuming, arguendo, that Holly's statements to her mother are excited utterances under Evid.R. 803(2), then the trial court abused its discretion in admitting hearsay statements allegedly made by appellant that were contained in Holly's excited utterances. Appellant, in his brief, specifically points to the following statements that were allegedly made by appellant:
 "`He told her to write her phone number down because he thought that they could be girlfriend and boyfriend', `He would say anything about, [w]e could be boyfriend and girlfriend she kept saying something like, `I already have a boyfriend.' He told her that she better not have a boyfriend, that he would be watching her. He knew what school she went to and all." Transcript at 107. According to appellant, such statements "constitute hearsay within hearsay."
We find that the trial court did not abuse its discretion in admitting the above statements since they were not "hearsay within hearsay." As is stated above, the excited utterance exception permits Mrs. Fink's statements to come in under Evid.R. 803(2). Under Evid.R. 801(D)(2), appellant's statements to Holly Fink were not hearsay. See State v.Elkins (Sept. 27, 2000), Summit App. No. 19684.[1] Evid.R. 801(D) provides, in relevant part, as follows:
 "(2) Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."
In the case sub judice, the statements complained of are those of the victim stating what the appellant had said to her. Under Evid.R. 801(D)(2), a statement is not hearsay if it is offered against a party and is his own statement. See State v. Czajka (1995), 101 Ohio App.3d 564,656 N.E.2d 9.
Accordingly, based on the foregoing, appellant's fifth assignment of error is overruled.
 VI
Appellant, in his sixth assignment of error, argues that the trial court abused its discretion when it refused appellant's request for the grand jury testimony of Holly Fink.
Ohio Crim.R. 6(E) provides, in part, that "[d]eliberations of the grand jury and the vote of any grand juror shall not be disclosed." However, if the defense shows a "particularized need" for disclosure that outweighs the need for secrecy, all relevant portions of a grand jury transcript should be produced. State v. Greer (1981) 66 Ohio St.2d 139,420 N.E.2d 982. A "particularized need" exists "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial". State v. Davis (1988),38 Ohio St.3d 361, 365, 528 N.E.2d 925. A claim of particularized need cannot be replete with speculation and innuendo. State v. Stojetz,84 Ohio St.3d 452, 460, 1999-Ohio-464, 705 N.E.2d 329, syllabus. Whether to release grand jury testimony "is within the discretion of the trial court." Greer, supra. at paragraph one of the syllabus. A decision to deny release will not be reversed absent an abuse of discretion. Statev. Brown (1988), 38 Ohio St.3d 305, 308, 528 N.E.2d 523, 530.
During the trial in this matter, appellant orally requested an order from the trial court that appellee provide appellant with Holly's grand jury testimony. Appellee stated on the record that "[i]n discussions with the Prosecutor last week, he indicated to me that he would provide grand jury testimony upon conclusion of her [trial] testimony." Transcript at 152. Appellant further indicated that he needed such testimony since, in none of the Crim.R. 16 witness statements provided to him, was there any mention of digital penetration. The trial court, however, denied appellant's request for the grand jury testimony since the same was neither available or obtainable and since appellant was not entitled to Holly's grand jury testimony for impeachment purposes.
We find that the trial court did not abuse its discretion in refusing appellant's request for Holly's grand jury testimony since appellant did not show a particularized need. When a defendant "speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination * * * by revealing contradictions," the trial court does not abuse its discretion by finding the defendant had not shown a particularized need. State v. Webb, 70 Ohio St.3d 325, 337,1994-Ohio-425, 638 N.E.2d 1023. In addition, while appellant informed the trial court that he needed Holly's grand jury testimony since, while Holly testified during direct examination that she was digitally penetrated by appellant, such allegation was not contained in Detective Keckler's written report, we note that, at trial, appellant had an opportunity to cross-exam Holly regarding any alleged inconsistencies.
Appellant's sixth assignment of error is, therefore, overruled.
Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.
EDWARDS, J., HOFFMAN, P.J., and GWIN, J. concur.
[1] In Elkins, the court held that even though a witness was relating the statements that the defendant had made to the victim, as the witness heard them from the victim, "this is not hearsay within hearsay." Id. at fn. 1. The court, in Elkins, noted that while the excited utterance exception permitted the victim's statement to come in under Evid.R. 803(2), "Evid.R. 801(D)(2) defines Defendant's statement as nonhearsay because it is in an admission of a party opponent."