OPINION
{¶ 1} Defendant-Appellant, Calvin Johnson, appeals a Wyandot County Common Pleas Court judgment, sentencing him to a five year term of imprisonment upon his conviction for engaging in a pattern of corrupt activity. Johnson asserts that the trial court committed error by giving the jury an alternative theory of guilt instruction, by sentencing him for a second degree offense, by sentencing him to a five year license suspension, and by assessing court costs. Johnson further asserts that the evidence was insufficient to prove an enterprise separate and distinct from the pattern of corrupt activity and was insufficient to support a finding that Johnson either trafficked in or possessed drugs. Finally, Johnson asserts his trial counsel was ineffective, because he failed to preserve issues for appeal and that R.C. 2923.32 is unconstitutionally vague on its face and as applied to himself. Finding the judgment of the trial court as to the payment of court-appointed attorney fees and the five year license suspension was improper, that portion of the judgment is reversed. However, we affirm the judgment in all other respects.
 {¶ 2} On July 18, 2001, the Wyandot County Grand Jury indicted Johnson on one count of complicity to possess crack cocaine in violation of R.C. 2925.11(A). On May 15, 2002, Johnson was additionally indicted on one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32. The second indictment alleged twenty incidents of corrupt activity, consisting of drug trafficking and possession, and was specifically charged as a felony of the first degree. Subsequently, the indictments were consolidated for trial, and a trial was conducted before a jury in March of 2003.
 {¶ 3} At trial, the state presented evidence that apartment manager, Chet Rowe, contacted the police when he noticed a steady increase in traffic coming and going to one of the apartments at the complex. Rowe's call prompted the police to conduct surveillance on the apartment of Deb Thomas. The police also began pulling the trash from the dumpster behind Thomas' apartment, looking for envelopes or other information with her or her children's name, in order to identify the trash as hers. As a result of the trash pull, the police recovered almost 200 sandwich baggies with the corners missing, over 60 sandwich baggie knots, several spent lighters and several pieces of burnt steel wool. All of the items recovered from the trash pull were circumstantial evidence of drug use and sales.
 {¶ 4} Based upon the contents recovered from the trash pull, the police were able to obtain a search warrant for Thomas' apartment. During the search of Thomas' apartment, the police recovered 50 individually wrapped packages of suspected crack cocaine, nine hundred dollars in cash, a razor blade and plate and a bureau of motor vehicle slip registration for a vehicle belonging to Calvin Johnson.
 {¶ 5} Matt Congleton, a chemist from the Ohio Attorney General's Office of Criminal Investigation and Identification, testified that the 50 packages obtained from Thomas' office contained crack cocaine. He also testified that 49 of the packages, which were individually wrapped, weighed a total of 8.5 grams. The other individually wrapped bag contained one piece of crack cocaine that weighed 27.4 grams.
 {¶ 6} The state also presented the testimony of Deb Thomas and Tamara Ellen Morris. Both Thomas and Morris had been separately prosecuted for the possession of crack cocaine. Each plead guilty and promised to testify against Johnson, receiving a two year prison sentence and a 30 day jail sentence, respectively.
 {¶ 7} Both Thomas and Morris testified that they knew Johnson as "Marcus," that Johnson had sold crack cocaine out of their apartments and that Johnson had supplied them with crack cocaine to sell out of their apartments. Specifically, Thomas stated that she had been romantically involved with Johnson from September through December of 2001 and that Johnson made trips from Toledo and would stay with her two to four days at a time. Each time Johnson would come from Toledo he would bring with him approximately half an ounce to an ounce of crack cocaine. Thomas also testified that Johnson taught her how to "cut" the crack cocaine into smaller pieces and how to package it for sale. Morris testified that Johnson sold crack cocaine out of she and her husband's home from June to September of 2000. Morris stated that both she and her husband were addicted to crack cocaine and that Johnson would supply them crack cocaine for the use of their home. She also stated that Johnson traveled from Toledo and would stay approximately two to three days at a time.
 {¶ 8} Finally, the state presented the testimony of William Latham, Wyandot County Prosecuting Attorney's Office investigator, who spoke with Johnson after his arrest. According to Latham, Johnson stated that he was in Upper Sandusky only to party and never supplied Morris or Thomas with crack cocaine.
 {¶ 9} Upon the state resting its case, Johnson himself took the stand. He denied being known as "Marcus," but stated that he did have a son with that name. He also denied supplying Morris and Thomas with crack cocaine for use or sale, as well as denied selling crack cocaine out of their homes. Johnson did admit to knowing Morris, her husband and Thomas, but stated that he only partied with them.
 {¶ 10} Following the three day trial, the jury acquitted Johnson of the complicity charge, but found him guilty of the corrupt activity charge. The jury went on to make a specific finding, as to the corrupt activity charge, that the amount of drugs involved were not equal to or greater than five grams. Subsequently, based on the specific findings made by the jury as to weight, Johnson was sentenced on the corrupt activity charge as a second degree felony. It is from this sentence that Johnson appeals, presenting the following assignments of error for our review.
The trial court erred in instructing the jury that it couldfind the defendant guilty of O.R.C. § 2923.32 on alternativetheories of guilt, in violation of appellant's rights under theOhio R. Crim. P. 31(A); U.S. Const. Amends. VI and XIV; and Art.I § 10 of the Ohio Constitution; Schad v. Arizona, 501 U.S. 624(1991); Richardson v. United States, 526 U.S. 813 (1999).
 The trial court erred in sentencing appellant for a seconddegree corrupt activity offense because only the jury has thepower to convict on a lesser degree offense. Apprendi v. NewJersey, 530 U.S. 466 (2000); United States v. Gaudin,515 U.S. 560 (1995); U.S. Const. Amend. V, VI, XIV; O.R.C. § 2945.74.
 The evidence is insufficient to support a conviction underO.R.C. § 2923.32 because the state failed to prove an enterpriseseparate and distinct from the pattern of corrupt activity.U.S. Const. Amend. V, VI, VIII, IX, XIV, O.R.C. § 2923.32.
 The trial court erred in sentencing appellant to a five yearlicense suspension because appellant was not convicted of a drugoffense. O.R.C. § 2925.03.
 The trial court erred in assessing court costs and courtappointed counsel fees against an indigent defendant. O.R.C. §§[sic] 2949.14, 2949.15, 2949.092, 2941.51(D).
 Trial counsel rendered ineffective assistance in failing topreserve issues for appeal. U.S. Const. Amend. VI, XIV.
 The evidence is insufficient to support a conviction ofcorrupt activity because the evidence is insufficient to supporta finding that appellant either trafficked in drugs or possesseddrugs. O.R.C. § 2923.32; 2925.03; 2923.31; In re Winship,397 U.S. 358, 364 (1970).
 O.R.C. § 2923.32 is unconstitutional because it is vague andunspecific both on its face and as applied to appellant.U.S. Const. Amend. VIII; O.R.C. § 2923.32
 {¶ 11} Due to the nature of the claims, we will address the assignments of error out of order.
 Assignments of Error No. 3 7 {¶ 12} In the third assignment of error, Johnson contends the evidence was insufficient to prove an enterprise separate and distinct from the pattern of corrupt activity. In the seventh assignment of error, Johnson further contends the evidence was insufficient to support a finding that Johnson either trafficked in or possessed drugs. Because these assignments of error are interrelated, we will address them together.
 {¶ 13} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89.
 {¶ 14} Johnson was found guilty of violating R.C.2923.32(A)(1), which states:
(A)(1) No person employed by, or associated with, anyenterprise shall conduct or participate in, directly orindirectly, the affairs of the enterprise through a pattern ofcorrupt activity * * *.
R.C. 2923.31(C) defines "enterprise" to include:
 * * * any individual, sole proprietorship, partnership,limited partnership, corporation, trust, union, governmentagency, or other legal entity, or any organization, association,or group of persons associated in fact although not a legalentity. `Enterprise' includes illicit as well as licitenterprises.
And, finally, R.C. 2923.31(E) states:
`Pattern of corrupt activity' means two or more incidents ofcorrupt activity, whether or not there has been a priorconviction, that are related to the affairs of the sameenterprise, are not isolated, and are not so closely related toeach other and connected in time and place that they constitute asingle event.
 {¶ 15} The predicate incidents Johnson was alleged to have engaged in included trafficking in and possession of crack cocaine as defined by R.C. 2923.03 and 2925.11, respectively. R.C. 2925.03 defines trafficking as:
(A) No person shall knowingly do any of the following:
 (1) Sell or offer to sell a controlled substance;
 (2)Prepare for shipment, ship, transport, deliver, prepare fordistribution, or distribute a controlled substance, when theoffender knows or has reasonable cause to believe that thecontrolled substance is intended for sale or resale by theoffender or another person.
Possession of crack cocaine was defined as "knowingly obtained, possessed or used crack cocaine in an amount equal to or exceeding one gram." R.C. 2925.11(A) and (C)(4)(a).
 {¶ 16} In the seventh assignment of error, Johnson maintains that the evidence is insufficient to prove beyond a reasonable doubt that he either trafficked in or possessed crack cocaine. In the alternative, in the third assignment of error, Johnson maintains that even if the verdict shows the jury found that he either trafficked in or possessed crack cocaine, the evidence is nevertheless insufficient to prove beyond a reasonable doubt an enterprise separate from a pattern of corrupt activity. We disagree.
 {¶ 17} At trial, there was evidence presented that the investigation began when apartment manager, Chet Rowe, contacted the police about a steady increase in traffic coming and going to one of the apartments in his complex. Rowe also gave the police the license plate number of a car with Lucas County license plates that had been frequently at the complex for several days at a time. Pursuant to that call, the police began surveillance on Deb Thomas' apartment, including conducting trash pulls that produced evidence of drug use and trafficking. Additionally, the police also observed the car with the Lucas County license plate number that Rowe provided. When the plate number was traced, the police discovered Johnson was the registered owner of that vehicle.
 {¶ 18} Subsequently, a search warrant was obtained and over thirty-five grams of crack cocaine was recovered from the search of Thomas' apartment. Additionally, the Johnson's BMV vehicle registration was found at Thomas' apartment during the search.
 {¶ 19} Morris and Thomas both testified that Johnson supplied each with crack cocaine for the use of their apartments. As stated above, both testified that they knew Johnson as "Marcus," that Johnson had sold crack cocaine out of their apartments and that Johnson had supplied them with crack cocaine to sell out of their apartments. Specifically, Thomas stated that she had been romantically involved with Johnson from September through December of 2001 and that Johnson made trips from Toledo and would stay with her two to four days at a time. Each time Johnson would come from Toledo he would bring with him approximately half an ounce to an ounce of crack cocaine. Thomas also testified that Johnson taught her how to "cut" the crack cocaine into smaller pieces and package it for sale. Morris testified that Johnson sold crack cocaine out of she and her husband's home from June to September of 2000. Morris stated that both she and her husband were addicted to crack cocaine and that Johnson would supply them crack cocaine for the use of their home. She also stated that Johnson traveled from Toledo and would stay approximately two to three days at a time.
 {¶ 20} The state also provided the testimony of Agent George Gyrko, who testified as to the inflated retail value of crack cocaine in Wyandot County. When asked, "Can you compare for us, Agent Gyrko, prices for crack cocaine in the fall of 2000 visa via metropolitan Toledo and a county such as Wyandot," Gyrko stated:
Yeah. It's double. Toledo, a twenty dollar rock would sell onthe street in Toledo in the north end, for example, and if wesold it down here you can charge double; forty dollars for arock, if not a little more. It's supply and demand. The demand,uhm, in this area is fairly high. Demand in Toledo is also high,but the supply is greater so the prices have to come down.
 {¶ 21} Finally, Johnson himself admitted to using illegal drugs. In his testimony, while he denied trafficking in crack cocaine or supplying either Morris or Thomas with drugs, he did admit that he "[s]moked drugs. Uhm, any drugs from legal to illegal."
 {¶ 22} Based on the above testimony of Morris and Thomas, it is clear the evidence is sufficient to find Johnson either trafficked in or possessed crack cocaine. Although both Morris and Thomas were convicted of related drug offenses and were co-conspirators who were testifying as a result of plea agreements, this information was made known to the jury. Their criminal histories and substance abuse problems were revealed to the jury members, who could then take that information and consider the reliability of these witnesses. Moreover, both Morris and Thomas corroborated one another's stories. Furthermore, the state's additional evidence further supported a finding that Johnson either trafficked in or possessed crack cocaine. Finally, Johnson's own testimony was sufficient to support a finding of possession of crack cocaine. Accordingly, upon reviewing the evidence in the light most favorable to the state, we find that a rational trier of fact could have found all of the essential elements for either trafficking in or possession of crack cocaine.
 {¶ 23} Additionally, upon reviewing the evidence presented in a light most favorable to the state, we find that a rational trier of fact could have also found an enterprise distinct and separate from the pattern of corrupt activity. As this Court noted in State v. Sifred, 151 Ohio App.3d 103, 2002-Ohio-6801
at ¶ 43,
[f]ederal and state courts have generally defined the conceptof being `associated with' an enterprise within the overallcontext of the statute, often concluding that a defendant has`associated with' an enterprise when he or she `participate[d]'in, directly or indirectly, the affairs of the enterprise. InSchlosser, the Ohio Supreme Court described the level ofassociation necessary to support an R.C. 2923.32(A)(1) convictionin a broad sense, indicating that the state `had to prove thateach defendant was voluntarily connected to the pattern [ofcorrupt activity comprising the enterprise], and performed two ormore acts in furtherance of it.' Again, `the RICO net is woventightly to trap even the smallest fish, those peripherallyinvolved with the enterprise. * * * Direct evidence of agreementis unnecessary: `proof of such an agreement may rest uponinferences drawn from relevant and competent circumstantialevidence, ordinarily the acts and conduct of the allegedconspirators themselves.' Additionally, once the conspiracy hadbeen established, the government need show only `slight evidence'that a particular person was a member of the conspiracy. Ofcourse, a `party to the conspiracy need not know the identity, oreven the number, of his confederates.'' (citations omitted.)
 {¶ 24} Based on the evidence presented at trial, there is sufficient evidence to find that Johnson was engaged in an enterprise involving the transportation and trafficking of drugs from Toledo to Wyandot County. Unlike State v. Agner (1999),135 Ohio App.3d 286, 290-291, where there was only evidence of a single defendant selling drugs with no further evidence of the defendant being a member of any larger organization, Morris and Thomas' testimony provide evidence of Johnson being the supplier of an enterprise to bring drugs from Toledo to Wyandot County. The testimony of Agent Gyrko further shows the profitability in such an enterprise. Accordingly, reviewing the evidence presented in a light most favorable to the State, we find that a rational trier of fact could have found all of the essential elements to conclude Johnson was employed by or associated with an enterprise.
 {¶ 25} Finding that a rational trier of fact could have found Johnson trafficked in or possessed crack cocaine and that an enterprise existed, the third and seventh assignments of error are overruled.
 Assignment of Error No. 1 {¶ 26} In the first assignment of error, Johnson asserts that a portion of the court's corrupt activity jury instruction was error.
 {¶ 27} At trial, Johnson faced one count of complicity to possess crack cocaine and one count of engaging in a pattern of corrupt activity. In the indictment, the state cited twenty incidents of corrupt activity as a basis for the corrupt activity charge, including sixteen incidents of alleged trafficking and four incidents of alleged possession. In his first assignment of error, Johnson challenges the following jury instruction, given by the trial court:
You do not need to find that the defendant participated in allof the incidents as alleged. However, you must find unanimously,and beyond a reasonable doubt, that he participated in no lessthan two of these incidents as part of a pattern of corruptactivity before you may find him guilty, and that for those twoor more incidents the combined value of the contraband exceedsfive hundred dollars.
 To this end, the State of Ohio alleges that the defendantengaged in certain incidents of corrupt activity constitutingTrafficking in Cocaine and/or Possession of Crack Cocaine. * * *
 {¶ 28} Errors alleged in jury instructions for which there are no objections are waived in the absence of plain error.[1] Crim.R. 52; State v. Long (1978),53 Ohio St.2d 91, 94. An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Cooperrider (1983),4 Ohio St.3d 226, 227.
 {¶ 29} A review of the trial court's entire charge to the jury reveals that the jury was given the proper instruction for engaging in a pattern of corrupt activity.
 {¶ 30} It is well settled that a criminal defendant is entitled to a complete and accurate jury instruction on all issues raised by the evidence. State v. Willford (1990),49 Ohio St.3d 247, 251. When reviewing the trial court's charge, a "single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." State v. Price (1979), 60 Ohio St.2d 136, 141, citingCupp v. Naughter (1973), 414 U.S. 141, 146-147. Viewing the instructions in their totality, if the law is clearly and fairly expressed, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. Margroff v. CornwellQuality Tools, Inc. (1991), 81 Ohio App.3d 174, 177; Yeager v.Riverside Methodist Hosp. (1985), 24 Ohio App.3d 54, 55. Furthermore, there is a strong presumption in favor of the propriety of jury instructions. Instructions which, in their totality, are sufficiently clear to permit the jury to understand the relevant law shall not be the cause of a reversal upon appeal. Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207,210.
 {¶ 31} Looking at the jury instructions given regarding the corrupt activities charge, the court instructed the jury:
The defendant is charged in Count One of the Indictment withEngaging in a Pattern of Corrupt Activity, in violation of OhioRevised Code 2923.32(A)(1). Before you can find the defendantguilty of this count, you must find beyond a reasonable doubt,that between June of 2000 and December 11, 2000 in WyandotCounty, Ohio, the defendant, while associated with an enterprisedid conduct or participate directly or indirectly the affairs ofthe enterprise through a pattern of corrupt activity.
The court went on to define enterprise, corrupt activity, pattern of corrupt activity, contraband, attempt, and solicit, as well as to explain that that jury should apply ordinary usage of the English language to certain things. The court also instructed the jury that the state did not have to prove that the incidents were committed on certain dates, nor did the incidents have to be formally charged.
 {¶ 32} The court then read the instruction being challenged. Again, it stated
You do not need to find that the defendant participated in allof the incidents as alleged. However, you must find unanimously,and beyond a reasonable doubt, that he participated in no lessthan two of these incidents as part of a pattern of corruptactivity before you may find him guilty, and that for those twoor more incidents the combined value of the contraband exceedsfive hundred dollars.
 To this end, the State of Ohio alleges that the defendantengaged in certain incidents of corrupt activity constitutingTrafficking in Cocaine and/or Possession of Crack Cocaine. * * *
Finally, the court stated:
The State of Ohio has alleged that the defendant engaged in,attempted to engage in or solicited another person to engage inTrafficking of Crack Cocaine. Before you can find that the statehas proven the allegation, you must find beyond a reasonabledoubt that, on or about June 2000 through December 2000, and inWyandot County, Ohio, the defendant knowingly sold or offered tosell crack cocaine; when the defendant intended to sell or resellthe crack cocaine, or the defendant knew or had reasonable causeto believe that another person intended to sell or resell thecrack cocaine.
The court made an identical instruction as to the possession of crack cocaine, using the same date reference. The court then instructed the jury on all necessary elements for both trafficking in and possession of crack cocaine, defining each of the necessary elements individually. Thus, viewing the challenged instruction in the context of the entire jury charge, we find that instructions clearly and fairly expressed the law concerning the corrupt activity charge.
 {¶ 33} Nevertheless, on appeal, Johnson now argues that the challenged instruction was plain error because it allowed the jury to convict him on alternative theories of guilt, in that it allowed for the possible interpretation that the jurors only had to unanimously agree that Johnson committed two incidents as opposed to unanimously agreeing upon the same two specific incidents. In other words, the instruction might be read to permit six jurors to agree on incidents one and two and six jurors agree on incidents three and four, thereby unanimous in finding "two" incidents but not unanimous in which two.
 {¶ 34} This Court has specifically found "that the presence of the requisite number of predicate offenses comprising the pattern of corrupt activity was an essential element of R.C. 22923.32(A)(1) offense." Siferd, 151 Ohio App.3d at ¶ 23. Accordingly, as essential elements of the charge, distinct proof is required to prove the requisite predicate offenses comprising the pattern of corrupt activity charge. However, in State v.Johnson (1989), 46 Ohio St.3d 96, the Ohio Supreme Court, relying on the United States Supreme Court, noted, "`when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged.'" Id. at 104, citing Turner v. United States (1970), 396 U.S. 398, 420,90 S.Ct. 642. In this case, there was sufficient evidence to support all of the eligible predicate incidents of either trafficking in or possession of crack cocaine. Thus, even after considering the jury's specific finding, as to the corrupt activity charge, that the amount of drugs involved were not equal to or greater than five grams, the jury was still left to consider eight legally sufficient incidents of trafficking and three legally sufficient incidents of possession. Accordingly, because there is sufficient evidence in the record to support any two of the eleven eligible predicate incidents, we cannot find plain error in the failure of the record to demonstrate conclusively which two predicate incidents formed the basis of this verdict. Nor are we convinced it is a legal requirement for a jury verdict to make such a specification in a RICO case. See for example State v. Hurd (May 4, 1999), 10th Dist. No. 96APA03-326, 96APA03-327 and 96APA03-328, at *20-22, unreported, citing and discussing at length Griffin v. United States
(1991), 502 U.S. 46, 112 S.Ct. 466, which upheld unspecified general verdicts where there was sufficient factual evidence on at least two of the predicate incidents alleged and where those predicate incidents were not otherwise legally insufficient.
 {¶ 35} In sum, it is our conclusion that, viewing the jury charge in its entirety, the court's instructions regarding the corrupt activity charge were sufficient and without error. Accordingly, the first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 36} In the second assignment of error, Johnson argues that because the indictment specifically charged a violation of corrupt activity in the first degree, the court's sentencing him to a second degree corrupt activity charge was error.
 {¶ 37} Here, Johnson was indicted under R.C. 2923.32(A)(1), which states
No person employed by, or associated with, any enterpriseshall conduct or participate in, directly or indirectly, theaffairs of the enterprise through a pattern of corrupt activityor the collection of an unlawful debt.
Subpart (B)(1) provides:
Whoever violates this section is guilty of engaging in apattern of corrupt activity. Except as otherwise provided in thisdivision, engaging in corrupt activity is a felony of the seconddegree. If at least one of the incidents of corrupt activity is afelony of the first, second, or third degree, * * * engaging in apattern of corrupt activity is a felony of the first degree.
 {¶ 38} In the indictment, Johnson was originally charged with engaging in a pattern of corrupt activity. The indictment further listed twenty incidents of corrupt activity, consisting of eight incidents of drug trafficking of the fifth degree, eight incidents of drug trafficking of the third degree or greater, one incident of possession of the fifth degree, two incidents of possession of the fourth degree, and one incident of possession of the third degree.
 {¶ 39} To constitute a first degree felony at least one of the incidents of corrupt activity must be a felony of the first, second or third degree. R.C. 2923.32(B)(1). Without such proof, Johnson's charge stood only as a second degree felony. Here Johnson's conviction for corrupt activity could only be enhanced to a first degree felony if the jury found that one of the incidents of trafficking or possession were of the third degree or greater. In Johnson's case, the third degree predicate incidents were based on allegations of an amount of crack cocaine that was equal to or greater than five grams.
 {¶ 40} However, in its verdict, the jury found Johnson guilty of the corrupt activity charge and made a specific finding that "within the pattern of corrupt activity, that at least one of the incidents of corrupt activity did not involve an amount of crack cocaine that was equal to or greater than 5 grams." Because the jury's special finding on the amount precluded the enhancement to the first degree felony level, Johnson was convicted only on a second degree felony. Thus, this was simply a matter of a failed enhancement of a second degree felony to a first degree felony, and there is no issue of "lesser included offense" as argued by appellant. Accordingly, the second assignment of error is overruled.
 Assignment of Error No. 4 {¶ 41} In the fourth assignment of error, Johnson contends the trial court erred in imposing a five year license suspension. The state has taken no position on this issue.
 {¶ 42} "The function and duty of a court is to apply the law as written." State v. Beasley (1984), 14 Ohio St.3d 74, 75. Additionally, "[c]rimes are statutory, as are the penalties therefor, and the only sentence which a trial judge may impose is that provided for by statute." Colegrove v. Burns (1964),175 Ohio St. 437, 438. Accordingly, "[a]ny attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void." Beasley, supra.
 {¶ 43} During the sentencing hearing and in its journal entry, the trial court stated "that Defendant's Ohio driver's license shall be suspended for a period of five (5) years, commencing May 29, 2003, and that Defendant shall surrender his driver's license to law enforcement officer's immediately." The court cited no authority for the suspension of Johnson's license at either the sentencing hearing or in its journal entry.
 {¶ 44} Johnson was convicted of engaging in a pattern of corrupt activity, pursuant to R.C. 2923.32. Upon a review of R.C.2923.32, we cannot find any statutory authority to support the court's suspension of Johnson's driver's license. Subpart (B)(1) of R.C. 2923.32 states:
Whoever violates this section is guilty of engaging in apattern of corrupt activity. Except as otherwise provided in thisdivision, engaging in corrupt activity is a felony of the seconddegree. If at least one of the incidents of corrupt activity is afelony of the first, second, or third degree, aggravated murder,or murder, if at least one of the incidents was a felony underthe law of this state that was committed prior to the effectivedate of this amendment and that would constitute a felony of thefirst, second, or third degree, aggravated murder, or murder ifcommitted on or after the effective date of this amendment, or ifat least one of the incidents of corrupt activity is a felonyunder the law of the United States or of another state that, ifcommitted in this state on or after the effective date of thisamendment, would constitute a felony of the first, second, orthird degree, aggravated murder, or murder under the law of thisstate, engaging in a pattern of corrupt activity is a felony ofthe first degree.
Furthermore, R.C. 2923.32 sets forth various additional financial sanctions and special forfeiture rules for any personal or real property used in or intended to be used in the course of engaging in a pattern of corrupt activity. Finally, subpart (D) states "Criminal penalties under this section are not mutually exclusive, unless otherwise provided, and do not preclude the application of any other criminal * * * remedy under this or any other section of the Revised Code." Accordingly, there is nothing in the statutory language of R.C. 2923.32 itself granting the court the authority to impose a license suspension.
 {¶ 45} Additionally, there were no further charges upon which the court could have based Johnson's sentence. While both R.C.2925.03,[2] trafficking in drugs, and R.C.2925.11,[3] possession of drugs, allow for the suspension of a defendant's driver's license, Johnson was not convicted under either statute in this case, as he was not separately charged with the predicate offenses. Accordingly, since the court was limited to sentencing pursuant to R.C. 2923.32, which does not authorize the suspension of a defendant's license, the court's suspension of Johnson's license was improper.
 {¶ 46} Finding the trial court's suspension of Johnson's license was error, the fourth assignment of error is sustained.
 Assignment of Error No. 5 {¶ 47} In the fifth assignment of error, Johnson contends the court erred in assessing court costs and court-appointed counsel fees against Johnson, because he was an indigent defendant.
 {¶ 48} Here, the judgment entry of sentencing stated that costs and attorney fees were assessed against Johnson. Contrary to Johnson's argument, we find that the trial court did not err in assessing the costs of prosecution. R.C. 2947.23 provides, in pertinent part:
In all criminal cases * * * the judge or magistrate shallinclude in the sentence the costs of prosecution and render ajudgment against the defendant for such costs. If a jury has beensworn at the trial of a case, the fees of the jurors shall beincluded in the costs * * *.
Based upon the plain language of the foregoing statute, we cannot find that the trial court erred in assessing costs against Johnson. Nothing in R.C. 2947.23 prohibits the court from assessing costs to an indigent defendant as part of the sentence. See State v. White, 5th Dist. No. 02CA23, 2003-Ohio-2289 at ¶ 9; State v. Engle (Mar. 19, 1999), 2nd Dist. No. 98-CA-125, unreported. Furthermore, Ohio law does not prohibit a judge from including court costs as part of the sentence of an indigent defendant. State v. Payne (Dec. 20, 1999), 5th
Dist. No. 99CAA05024, unreported.
On the other hand, we agree that the court erred by including court-appointed attorney fees in the judgment. R.C. 2941.51
addresses the payment of court-appointed counsel. This section provides that the county must reimburse a court-appointed attorney for any fees and expenses that the trial court approves. However, R.C. 2941.51(D) states that the represented defendant must reimburse the county for the expenses of a court-appointed attorney if that person "has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to him * * *."
 {¶ 49} Here, Johnson contends that the trial court erred in ordering him to pay the cost of his court-appointed counsel without first determining his ability to pay. The state takes no position on this issue.
 {¶ 50} In Galion v. Martin (Dec. 12, 1991), 3rd Dist. No. 3-91-06, unreported, this Court addressed the issue and stated:
[A]n indigent defendant may properly be required to pay hisattorney fees only after the court makes an affirmativedetermination on the record in the form of a journal entry, thatthe defendant has, or reasonably may be expected to have, themeans to pay all or some part of the cost of the legal servicesrendered to him. The court must then enter a separate civiljudgment for the attorney fees or any part thereof that the courtfinds the defendant has the ability to repay.
See, also, State v. Watkins (1994), 96 Ohio App.3d 195.
In the case sub judice, the court, during sentencing and it judgment entry of sentencing and without further inquiry into Johnson's ability to pay, ordered Johnson to pay court-appointed attorney's fees. Since the court failed to make a finding on the record that Johnson has or may be expected to have the ability to pay these attorney fees, the court erred in ordering Johnson to do so.
 {¶ 51} Finding that the court properly assessed court costs but erred in assessing court-appointed attorney's fees, the fifth assignment of error is overruled in part and sustained in part.
 Assignment of Error No. 6 {¶ 52} In the sixth assignment of error, Johnson claims that his trial counsel was ineffective for failing to object to the jury instructions that permitted the jury to convict on a less than unanimous verdict, for failing to object to the trial court's suspension of the driver's license and for failing to argue that the state did not prove an enterprise separate and distinct from the pattern of corrupt activity.
 {¶ 53} An ineffective-assistance-of-counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at para. three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Bradley (1989), 42 Ohio St.3d 136,142.
 {¶ 54} In light of our disposition of the preceding assignments of error, we cannot find that there is a reasonable probability that the claimed deficiencies would have changed the result of the trial. Accordingly, the sixth assignment of error is overruled.
 Assignment of Error No. 8 {¶ 55} In the eighth assignment of error, Johnson maintains that R.C. 2923.32 is unconstitutionally vague, rendering it unconstitutional on its face and as applied to Johnson.
 {¶ 56} We have previously upheld R.C. 2923.32 as constitutional in State v. Siferd, 151 Ohio App.3d at ¶ 52-53. Accordingly, the eighth assignment of error is overruled.
 {¶ 57} Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court as to the payment of court-appointed attorney fees and the five year license suspension, and affirm the judgment in all other respects. The matter is remanded for further proceedings in accordance with this opinion.
Judgment reversed in part, affirmed in part and cause remanded.
Cupp and Bryant, JJ., concur.
[1] "[I]n order to impose any obligation upon the trial court to give additional instructions to the jury, counsel must not only call the court's attention to such omission as he claimed, but must indicate clearly what he claims the law to be and what charge he desires the court to give." State v. Vance (Apr. 7, 1987), 3rd Dist. No. 9-85-39, unreported, citing State v.Grambo (1947), 82 Ohio App. 473, 477; See, also, Crim. R. 30. Here, Johnson did place an objection on the record; however, he failed to specifically state what he claimed the law to be, as well as to offer an alternative jury charge. Accordingly, we find any error in the instruction has been waived in the absence of plain error.
[2] R.C. 2925.03 provides in pertinent parts:
(D) In addition to any prison term authorized or required by division (C) of this section and sections 2929.13 and 2929.14 of the Revised Code, and in addition to any other sanction imposed for the offense under this section or sections 2929.11 to 2929.18
of the Revised Code, the court that sentences an offender who is convicted of or pleads guilty to a violation of division (A) of this section shall do all of the following that are applicable regarding the offender:
* * *
(2) The court shall suspend the driver's or commercial driver's license or permit of the offender in accordance with division (G) of this section.
[3] R.C. 2925.11 provides in pertinent parts:
(E) In addition to any prison term or jail term authorized or required by division (C) of this section and sections 2929.13,2929.14, 2929.22, 2929.24, and 2929.25 of the Revised Code and in addition to any other sanction that is imposed for the offense under this section, sections 2929.11 to 2929.18, or sections2929.21 to 2929.28 of the Revised Code, the court that sentences an offender who is convicted of or pleads guilty to a violation of division (A) of this section shall do all of the following that are applicable regarding the offender:
* * *
(2) The court shall suspend for not less than six months or more than five years the offender's driver's or commercial driver's license or permit.